**John BOWEN, Plaintiff,**

v.

**Connor BLAINE, Defendant.**

**Civil Action No. 00–4498.**

United States District Court, E.D. Pennsylvania.

Feb. 6, 2003.

Cheryl J. Sturm, Cheryl J. Sturm, Attorney at Law, Chadds Ford, PA, John Bowen, Waynesburg, PA, for Petitioner.

Thomas W. Dolgenos, Assistant District Attorney, Helen Kane Assistant District Attorney, Philadelphia, PA, for Respondent.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

TABLE OF CONTENTS

 I. BACKGROUND ...................................................300

II. DISCUSSION ....................................................301
 A. Insufficiency of the Evidence Claims ...................................301
 1. Procedural default in habeas cases ..................................302
 2. Bowen's procedural default .......................................303
 3. Bowen's cause and prejudice argument ..............................304
 4. Bowen's fundamental miscarriage of justice argument ..................306
 B. Bowen's Ineffective Assistance of Counsel Claims Based on Failure to
 Call Witnesses Dickerson, Damas and Brookens .........................307
 1. Strickland framework ............................................307
 2. The AEDPA statutory framework ...................................308
 3. Bowen's eligibility for an evidentiary hearing .........................309

4. The merits of Bowen's ineffective assistance of counsel claim . . . . . . . . . . . . . 310
 a. Strickland and the failure to call witnesses . . . . . . . . . . . . . . . . . . . . . . . 311
 b. The Pennsylvania Superior Court's decision . . . . . . . . . . . . . . . . . . . . . . . 312
 i. Failure to call Thomas Dickerson . . . . . . . . . . . . . . . . . . . . . . . . . . . 312
 ii. Failure to call Jordan Damas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 313
 iii. Failure to call Ronald Brookens . . . . . . . . . . . . . . . . . . . . . . . . . . . 314
 iv. Conclusions with respect to Bowen's ineffective assistance of
 counsel claim based on failure to call witnesses . . . . . . . . . . . . . . 315
 C. Counsel's Alleged Failure to Inform Bowen of His Right to Testify and to
 Make a Batson Challenge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 315
 1. The state procedural rule was both independent and adequate . . . . . . . . . . . 316
 2. Bowen alleges no cause and prejudice that excuses him from
 procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 320

John Bowen ("Petitioner" or "Bowen"), a state prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Presently before the court is the Report and Recommendation of the Magistrate Judge recommending that the petition be denied and dismissed. In arriving at that conclusion, the Magistrate Judge found that Petitioner's claims of insufficiency of the evidence were procedurally defaulted. Moreover, the Magistrate Judge concluded that Petitioner's claims of ineffective assistance of counsel based on counsel's failure to call three witnesses to testify at trial failed to satisfy the prejudice requirement of *Strickland*, and that his claims of ineffective assistance of counsel based on an alleged failure on the part of counsel to explain his right to testify, and on counsel's failure to make a *Batson* challenge, were procedurally defaulted. Petitioner filed objections to all of these dispositions. After de novo consideration of Petitioner's objections and Respondent's answer to the objections, the court will overrule Petitioner's objections, adopt the Report and Recommendation as supplemented by this memorandum, and deny and dismiss the petition.[1]

## I. BACKGROUND

Petitioner John Bowen was convicted in 1992 in the Court of Common Pleas of Philadelphia County of one count of first degree murder, one count of third degree murder, criminal conspiracy, and possessing an instrument of crime in connection with the shooting deaths of two men at a West Philadelphia night club on July 11, 1991.[2] He is currently serving a life sentence for the first degree murder with concurrent prison terms of ten to twenty years for third degree murder, five to ten years for conspiracy, and one to two years for possessing an instrument of crime.

1. After receiving the Magistrate Judge's Report and Recommendation, this court is required to make a "de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made . . . ." Fed.R.Civ.P. 72(b).

2. As determined by the various courts that have handled Bowen's case, on July 11, 1991, Bowen, his uncle, and his longtime friend Andre Natson engaged in an argument with James Madison, James Williams, and another man identified as "Reggie Reese" or "Reggie Reaves" outside of a West Philadelphia nightclub. In the course of this argument, Bowen drew a shotgun and Natson drew a nine millimeter handgun, and the two opened fire on the other men. Natson shot James Madison in the head, and killed him instantly. James Williams, incapacitated by a leg wound, crawled back into the nightclub. The courts concluded that Bowen followed Williams, and shot him twice at close range as he lay on the floor.

Alleging insufficient evidence to support his murder and conspiracy convictions and challenging a jury instruction on first degree murder, Bowen appealed to the Pennsylvania Superior Court, which affirmed his judgment of sentence. Bowen did not seek discretionary review of his insufficiency claims in the Pennsylvania Supreme Court.

Bowen did, however, choose to raise numerous claims of ineffective assistance of counsel in a collateral relief proceeding pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Const. Stat. Ann. § 9541 et *seq.* When the PCRA court denied his petition, Bowen appealed to the Pennsylvania Superior Court, which affirmed the dismissal of Bowen's PCRA petition and denied his motion for reconsideration. Bowen then filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied.

Arguing violations of Fifth Amendment due process and ineffective assistance of counsel, Bowen filed a pro se petition for writ of habeas corpus in federal court on September 5, 2000, amended on February 27, 2001 with the help of counsel. On January 29, 2002, Magistrate Judge Peter Scuderi recommended that Bowen's petition be denied. Bowen has filed numerous exceptions to the Magistrate Judge's Report and Recommendation.

## II. DISCUSSION

### A. Insufficiency of the Evidence Claims

Bowen raises four exceptions to the facts reported by the Magistrate Judge in his Report and Recommendation. Bowen asserts that the Magistrate Judge (1) unreasonably interpreted trial testimony to conclude that Bowen had stored the murder weapon at the club prior to the shooting, (2) misidentified one of the men involved in the argument that precipitated the shooting, (3) reached unwarranted conclusions that Bowen had drawn a gun and shot the victim, and (4) declined to correct an erroneous factual statement made by the Pennsylvania Superior Court when it concluded that there was sufficient evidence to convict Bowen, and so affirmed his judgment of sentence.[3]

A close examination of these arguments reveals that, form aside, Bowen's "exceptions" to the facts as found in the Magistrate Judge's Report and Recommendation are, in substance, a recycled version of the insufficiency claims that the Magistrate Judge concluded were procedurally defaulted.[4] For the reasons that follow, the

---

**3.** In an additional attempt to undercut the Magistrate Judge's statement of facts and bolster his own claims of insufficient evidence, Bowen attacks the Commonwealth's pleadings for their alleged failure to comply with the rules set forth in Rule 5 of the Rules Governing Rule 2254 Cases in the United States District Courts. Bowen appears to be arguing that the Commonwealth's noncompliance with the requirements generated unsupported and misleading pleadings, upon which the Magistrate Judge blindly relied in creating his statement of the facts of Bowen's case. An examination of the pleadings reveals that the Commonwealth erred only in failing to attach the relevant portions of the trial transcripts that it cited with specific and extensive page references throughout its submissions.

However, this error caused Bowen no prejudice. The full state record was delivered to the Magistrate Judge on May 18, 2001, as he had ordered. *See* Order dated Apr. 12th, 2001 (doc. no. 8). Armed with the page references that are present throughout the Commonwealth's responses to Bowen's petition, therefore, the Magistrate Judge was in a position to evaluate each party's version of the facts.

**4.** Each of Bowen's so-called factual exceptions is geared toward raising an insufficiency of the evidence claim. First, analyzing the trial testimony of Ronald Williams, Bowen insists that "[t]here is no evidence the Petitioner or Natson stored a shotgun at the Club. There is no basis to draw an inference that Petitioner or Natson stored a shotgun at the Club." Bowen then characterizes the Magis-

court concludes that Bowen's claims are indeed procedurally defaulted, and that the exceptions have no merit.

### 1. *Procedural default in habeas cases*

 Individuals in custody pursuant to state court judgments may seek federal habeas review if they allege that they are in custody "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and meet their burden of proving that they have exhausted all available state remedies. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993) (internal citations omitted). Grounded on principles of comity, the exhaustion requirement ensures that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir.2000), *cert. denied*, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). Accordingly, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

 In order to satisfy the exhaustion of state remedies requirement, a federal habeas petitioner must show that the claims included in his federal habeas petition were "fairly presented to the state courts," *Toulson*, 987 F.2d at 987, meaning that the questions presented in the federal habeas petition are the "substantial equivalent of th[ose] presented to the state courts." *Werts*, 228 F.3d at 192. A petitioner's failure to meet the burden of proving exhaustion will result in the dismissal of his federal habeas petition. *See Lines v. Larkins*, 208 F.3d 153, 159–60 (3d Cir. 2000), *cert. denied*, 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001).

 If a claim has not been fairly presented to the state courts, but state procedural rules preclude a petitioner from seeking further state court relief, the claims are technically exhausted, but procedurally defaulted. *Id.* at 160. Similarly, procedural default bars federal habeas claims where a state court has refused to consider a petitioner's claims because of his noncompliance with an independent and adequate state rule. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

Although procedural default may bar a petitioner from pursuing his constitutional claims in state court, the claims may be considered in federal habeas if the petitioner qualifies for either of two exceptions. First, the petitioner may show "cause for the default and actual prejudice as a result of the alleged violation of federal law...." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Second, the petitioner may

---

trate Judge's possible misidentification of Reginald Reaves as "Reginald Reese" as a "mistake of constitutional dimension." Moreover, insisting that "there is no evidence" that Bowen either drew a shotgun or fired shots at members of the JBM, or Junior Black Mafia, Bowen accuses the Magistrate Judge of "scrambling the facts." Finally, Bowen argues that the Magistrate Judge should have corrected a factual misstatement by the Superior Court on the grounds that "[t]his was an enormous mistake considering the issue on appeal was whether the evidence was sufficient to sustain the verdicts. The mistake was so humungous (sic) it had to have an affect (sic) on the Superior Court's judgments." The language of Bowen's petition thus reveals that all four "exceptions" to the Magistrate Judge's factual findings are intended to raise a claim of a due process violation predicated on the insufficiency of evidence to convict.

Apparently recognizing this reality, Bowen then argues fiercely against procedural default, first with an argument that his claims were not, in fact, subject to procedural default under Pennsylvania law, and second with arguments that he qualifies for an exception from default.

escape procedural default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* In this case, Bowen bases his argument that his claim is not procedurally barred on this second exception.

■ To qualify for the "fundamental miscarriage of justice" exception, a petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (citing *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Moreover, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence." *Id.* at 327, 115 S.Ct. 851 (noting that the actual innocence standard requires a "stronger showing than that needed to establish prejudice").

### 2. *Bowen's procedural default*

■ In support of the argument that he is not subject to procedural default, Bowen invokes Pennsylvania Supreme Court Order 218, which provides that "a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error." *Mattis v. Vaughn,* 128 F.Supp.2d 249, 255 n. 6 (E.D.Pa.2001) (quoting *In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam)). In practical effect, Order 218 serves to excuse habeas petitioners from the onus of having to seek discretionary review in the Pennsylvania Supreme Court in order to satisfy the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). However, for the reasons stated below,

Order 218 cannot apply to Bowen's claim, and therefore does not save his insufficiency claim from procedural default.

In 1999, the Supreme Court confronted the question of whether a state prisoner was required to present his claims to a state supreme court in a petition for discretionary review in order to satisfy the 28 U.S.C. § 2254(c) exhaustion requirement. *O'Sullivan v. Boerckel,* 526 U.S. 838, 839–40, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In concluding that state prisoners were indeed required to seek discretionary review "when that review is part of the ordinary appellate review procedure in the State," *id.* at 847, 119 S.Ct. 1728, the Supreme Court announced a rule with the potential to work a dramatic increase in the number of habeas filings in state supreme courts and, concomitantly, to impose an unwelcome and increased burden in some state courts that "d[id] not wish to have the opportunity to review constitutional claims before those claims are presented to a federal habeas court." *Id.*

Noting that the new rule and its added burden might "disserve[ ] the comity interests underlying the exhaustion doctrine," *id.,* the Court stated that "nothing in [its decision] requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable." *Id.* The Court explained:

> Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "the right under the law of the state to raise, by any available procedure, the question presented." The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available. We hold today only that the creation of a

discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable. *Id.* at 847–48, 119 S.Ct. 1728. These pronouncements left open the option that a state court might control its docket if it made review by the state supreme court non-mandatory. *See id.* at 849, 119 S.Ct. 1728 (Souter, J., concurring) (noting that *O'Sullivan* "left open the question ... whether [the Court] should construe the exhaustion doctrine to force a State, in effect, to rule on discretionary review applications when the State has made it plain that it does not wish to require such applications before its petitioners may seek federal habeas relief").

Order 218 constitutes an attempt on the part of the Pennsylvania Supreme Court, in response to *O'Sullivan,* to control its docket by placing discretionary state supreme court review of habeas petitions outside of Pennsylvania's ordinary appellate review procedure and therefore "unavailable." *See Wenger v. Frank,* 266 F.3d 218, 225 (3d Cir.2001); *Mattis,* 128 F.Supp.2d at 259 (noting that Order 218 and other rules like it make "crystal clear" a "state's unwillingness to have all possible claims brought to [state supreme courts] before a prisoner may seek federal review, [and] instead indicat[e] that state appellate courts will grant review only in unusual circumstances, or for important or special reasons, or for issues of broad significance"). In practical effect, Order 218 also worked a substantial change to Pennsylvania's existing appellate landscape, where legal precedent uniformly provided that procedural default barred claims for which habeas petitioners had failed to seek discretionary review with the Pennsylvania Supreme Court. *See, e.g., Evans v. Court of Common Pleas,* 959 F.2d 1227, 1230 (3d Cir.1992) (emphasizing that, to satisfy the exhaustion requirement, "[a] claim must be presented not only to the trial court but also to the state's intermediate court as well as its supreme court"); *Beaty v. Patton,* 700 F.2d 110, 111–12 (3d Cir.1983)(finding procedural default for failure to file a petition for allocatur in the Pennsylvania Supreme Court).

Bowen cannot, however, rely on Order 218 to excuse the procedural default resulting from his failure to file a petition for discretionary review in the Pennsylvania Supreme Court, because "Order 218 does not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the order." *Wenger,* 266 F.3d at 226. Given that under the ordinary rules of appellate procedure in Pennsylvania at that time, Bowen was required to file a petition for discretionary review within 30 days of the entry of the Superior Court's order, *see* Pa. R.A.P. 1113(a), or January 13, 1995, but failed to do so, he has procedurally defaulted on his claim of insufficiency of the evidence.

### 3. *Bowen's cause and prejudice argument*

Bowen next attempts to save his insufficiency claims by invoking the cause and prejudice exception to procedural default set forth in *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Within this framework, the Supreme Court has required that petitioners show "cause" for their procedural defaults by demonstrating that "some objective fact external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), as well as "prejudice," meaning "not merely that errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage...." *Id.* at 494, 106 S.Ct. 2639.

In this case, Bowen alleges that the cause for his procedural default was the

failure on the part of his counsel, Daniel Preminger, Esquire, to file his discretionary appeal in the Pennsylvania Supreme Court, in spite of promises to do so. Bowen then alleges that Preminger's failure to file a timely appeal with the Pennsylvania Supreme Court caused him to lose his right to argue that the evidence against him was insufficient, and to raise a *Batson* violation that had allegedly occurred at the trial court level.

The Supreme Court has recognized that attorney error that constitutes ineffective assistance of counsel within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) can constitute cause for relief from procedural default. *Coleman*, 501 U.S. at 753–54, 111 S.Ct. 2546 (explaining that "[w]here a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and harm to state interests that federal habeas review entails").

■ However, concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the Supreme Court concomitantly has required strict exhaustion of state remedies, even when counsel has been responsible for some procedural default. *See Murray*, 477 U.S. at 488–89, 106 S.Ct. 2639. Thus, "a claim of ineffective assistance of counsel [must] be presented to the state courts as an independent claim before it may be used to establish procedural default." *Id.* at 489, 106 S.Ct. 2639. This Bowen failed to do.

It is true that Bowen's first PCRA petition, filed pro se, alleges that Bowen's trial counsel, Daniel Preminger, Esquire, was ineffective for failing to file a petition for allowance of appeal in the Pennsylvania Supreme Court, after the Superior Court had affirmed his conviction. However, although his amended and supplemental PCRA petitions, both filed with appointed counsel, raise numerous claims of Preminger's ineffectiveness, those claims do not include any allegation that Preminger failed to file a petition for allowance of appeal when asked to do so. Thus, Bowen never properly placed this issue before the Pennsylvania state courts for review.

■ Bowen's claim that Preminger was ineffective for failing to file a petition for allowance of appeal is now in procedural default, because state procedural rules preclude him from seeking further relief. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000), *cert. denied*, 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). The PCRA, through amendments enacted in 1996, currently provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final...." 42 Pa. Cons.Stat. Ann. § 9545(b). However, the Pennsylvania legislature also provided that "an appellant whose judgment has become final on or before the effective date of this act shall be deemed to have filed a timely petition ... if the appellant's *first* petition is filed within one year of the effective date of the act." *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 641 (1999) (citing Act of Nov. 17, 1995 (Spec.Sess. No. 1) P.L. 1118, No. 32, § 3(1)). Bowen falls into this latter category. Bowen's judgment of sentence was affirmed on December 14, 1994, and he filed his first PCRA petition on January 14, 1997, within one year of January 16, 1996, the effective date of the PCRA amendments.

The one year grace period that saved Bowen's first petition could not, however, save a second petition, which would be necessary in order for Bowen to raise before the Pennsylvania courts his claim of ineffectiveness of counsel based on failure

to file a petition for allowance of appeal. *See Commonwealth v. Crawley*, 559 Pa. 9, 739 A.2d 108, 109 (1999) ("[T]here is no provision of a grace period for the filing of a second petition."). Moreover, Bowen cannot argue that he fits into one of the three exceptions to the PCRA's timeliness requirements, because he can allege no unconstitutional interference on the part of government officials, no facts that were previously unknown to him and incapable of discovery through due diligence, and no newly recognized constitutional right. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(1)(i)-(iii). Thus, since Bowen never placed before the state courts his claim of ineffective assistance of counsel for failure to file a petition for allowance of appeal, and because that claim is itself now procedurally defaulted,[5] it may not serve as "cause" excusing him from the procedural default of his insufficiency of evidence claim.

### 4. *Bowen's fundamental miscarriage of justice argument*

■ Bowen attempts to save his insufficiency claims from procedural default by invoking the "fundamental miscarriage of justice" exception to procedural default, which requires a showing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). In this context, " 'actual innocence' means factual innocence, not mere legal insuffi-

ciency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To succeed on an actual innocence claim, a petitioner must invoke "reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), and "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Bowen's claims meet none of these criteria.

■ In seeking to establish actual innocence, Bowen argues that the trial testimony linking him to the crimes for which he was convicted is "unworthy of belief." Bowen recites that one witness testified that the shooter, carrying a shotgun, left the Club through the rear door, and that another testified that he could not recognize Bowen as having been one of the shooters. Because these men both testified at trial, their testimony does not constitute the kind of "new evidence not presented at trial" that can trigger the fundamental miscarriage of justice exception.

Bowen also asserts that Thomas Dickerson, an eyewitness not called at trial, would have testified that, while he was standing outside the Club, he saw Bowen leaving by the front door without a shotgun. Even if Thomas Dickerson's testimo-

---

5. The fact that this claim of ineffective assistance of counsel is procedurally barred, rather than unexhausted, means that the court need not dismiss the instant petition as a "mixed" petition, namely one containing both exhausted and unexhausted claims, without prejudice pursuant to *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993) ("A petition containing unexhausted but procedurally barred claims

is not a mixed petition requiring dismissal under *Rose*."). This is so because "[a]lthough the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would find the claims procedurally defaulted." *Id.* Consequently, the court may not address the merits of the barred claims, but must decide the merits of those exhausted claims that are not procedurally barred. *Id.*

ny were to be considered new evidence not presented at trial, Bowen has failed to show that no reasonable jury would have convicted him, given that, unlike other witnesses at trial, Dickerson was not actually inside the club when James Williams was fatally shot. Therefore, Bowen's claim of innocence does not qualify his claims of insufficiency of the evidence for an exception based on a fundamental miscarriage of justice, and these claims remain procedurally barred.

B. *Bowen's Ineffective Assistance of Counsel Claims Based on Failure to Call Witnesses Dickerson, Damas and Brookens*

In addition to his insufficiency of evidence claims, Bowen raised before the Magistrate Judge a claim of ineffective assistance of counsel,[6] based on an alleged failure on the part of his trial counsel to call Thomas Dickerson, Jordan Damas, and Ronald Brookens to testify at his trial. In his exceptions to the Magistrate Judge's Report and Recommendation, Bowen asserts that the Magistrate Judge and the courts that preceded him in reviewing Bowen's claims, erroneously relied on an incomplete record, meaning one devoid of evidence of why Bowen's counsel had neglected to call witnesses Thomas Dickerson, Jordan Damas and Ronald Brookens, when they decided the merits of Bowen's ineffective assistance of counsel claims based on counsel's failure to call witnesses. Bowen argues that there is nothing in the record that shows why counsel failed to call certain witnesses who, Bowen contends, would have been helpful to his case.

It is true that the record lacks an affidavit from Bowen's trial counsel, or other evidence that might explain whether coun-

sel's actions stemmed from inadequate trial preparation, as opposed to well considered trial strategy. However, as explained below, for reasons rooted in the structure of *Strickland* and in the Antiterrorism and Effective Death Penalty Act (AEDPA), the court concludes that an evidentiary hearing is not warranted in this case.

1. *Strickland framework*

Establishing ineffective assistance of counsel under the familiar standard stated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires a claimant to show, by a preponderance of the evidence, that 1) "his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms," *United States v. Day* 969 F.2d 39, 42 (3d Cir.1992)(citing *Strickland,* 466 U.S. at 687–91, 104 S.Ct. 2052), and 2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Virgin Islands v. Nicholas,* 759 F.2d 1073, 1081 (3d Cir. 1985) (placing the burden of proving ineffective assistance of counsel on the petitioner).

To satisfy the first prong of *Strickland,* the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The second prong of *Strickland* requires that petitioner show that he suffered prejudice, meaning a different outcome, as a result of counsel's deficient performance. *See id.* at 694, 104 S.Ct. 2052. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of

---

**6.** Unlike Bowen's insufficiency claims, Bowen's ineffective assistance of counsel claims are not procedurally defaulted. As explained

at *supra* Part I, Bowen appealed the denials of his PCRA through the Pennsylvania Supreme Court.

a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. 2052.

An understanding of the nature of the *Strickland* inquiry is key to an understanding of Bowen's argument in favor of an evidentiary hearing, as well as to an understanding of why that argument is wrong. As described above, the two prongs of *Strickland* necessitate two different showings: (1) a professionally unreasonable performance on the part of counsel, and (2) resulting prejudice to the claimant. Thus, this structure provides two potential bases on which one claiming ineffective assistance of counsel in the habeas context might seek an evidentiary hearing for further development of the record. However, *Strickland* teaches that, in the ultimate disposition of an ineffective assistance of counsel claim, a reviewing court must read its two prongs of conjunctively. *See id.* at 697, 104 S.Ct. 2052; *United States v. Nino,* 878 F.2d 101, 104 (3d Cir.1989).

In practical effect, therefore, a record on habeas review need not be complete with respect to both prongs of the *Strickland* inquiry. If the record is complete with respect to only one of the two prongs of *Strickland,* but reveals that the claimant has failed to make the required showing on that prong alone, then the reviewing court can still properly conclude that the claimant has failed to prove his claim of ineffective assistance of counsel.

### 2. The AEDPA statutory framework

28 U.S.C. § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA), places significant limits on the ability of federal habeas petitioners to challenge state court decisions on the merits, and curtails the use of evidentiary hearings to develop during federal habeas review a record that was never completed and put before the state courts.[7] A federal habeas petitioner may secure federal review of an erroneous merits determination by the state courts only in one of two ways. First, the petitioner may attempt to undermine the state courts' determination of the merits by developing further the record of his claim. *See* 28 U.S.C. § 2254(e). Second, the petitioner may attempt to show that the state court's adjudication of the petitioner's claim resulted in either "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

---

7. Bowen relies on *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) for the proposition that an evidentiary hearing is necessary to make appropriate disposition of factual disputes. Bowen alleges that there is a factual disputes in this case over whether trial strategy or inadequate trial preparation caused his counsel to neglect to call certain witnesses on Bowen's behalf.

Bowen's reliance on *Blackledge* is misplaced. *Blackledge* involved a matter brought under 28 U.S.C. § 2255, and, most significantly, predates the AEDPA's 1996 enactment by almost ten years. In order to escape the reach of the AEDPA, Bowen's federal habeas petition would have had to have been filed or pending at the time that the statute was enacted on April 24, 1996. *See Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (describing the relevant AEDPA amendments as "governing all habeas proceedings in the federal courts" and explaining that such amendments "were ... meant to apply to ... habeas cases only when those [federal habeas] cases had been filed after the date of the Act"). Because Bowen's federal habeas petition was filed on September 5, 2000, the AEDPA sets forth the framework under which he can receive an evidentiary hearing.

When a petitioner argues to a federal court conducting habeas review that he is entitled to a further evidentiary hearing before the merits of his claims are reached, · the threshold question for the federal court is whether the habeas petitioner "has failed to develop the factual basis of his claim in State court proceedings." 28 U.S.C. § 2254(e)(2). When the petitioner has developed a factual basis for his claim in state court, a presumption of correctness attaches to the state court's factual determinations, and the habeas petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

When a petitioner has "failed" to develop a factual basis for his claim in the course of state proceedings, and is "at fault" for that deficiency, the AEDPA requires the petitioner to "satisfy a heightened standard to obtain an evidentiary hearing." *Williams v. Taylor,* 529 U.S. 420, 433, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). "The question is not whether the facts could have been discovered, but instead whether the prisoner was diligent in his efforts ... Diligence for purposes of the opening clause [of § 2254(e)(2) ] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435, 120 S.Ct. 1479.

In order to demonstrate that he was diligent and not at fault for the failure to develop the factual basis of his claim in state court, a petitioner must show, for example, that his claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2)(A)(ii), and that "[t]he facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the appli-

cant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

Yet, that a petitioner is able to meet this heightened standard does not guarantee an evidentiary hearing in federal court. The AEDPA provides merely that a federal court "shall not hold an evidentiary hearing," absent a showing of the special factors set forth in § 2254(e). 28 U.S.C. § 2254(e)(2). Thus, the provision authorizes, but does not require, a federal court to hold an evidentiary hearing if the special showing is met, and the ultimate decision to hold such a hearing lies squarely in the discretion of the court. *Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir.2000). The exercise of that discretion is guided by a consideration of "whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.*

### 3. *Bowen's eligibility for an evidentiary hearing*

As noted above, in his exceptions to the Magistrate Judge's Report and Recommendation, Bowen contends that he is entitled to an evidentiary hearing on whether his counsel's failure to call witnesses Dickerson, Damas, and Brookens at trial stemmed from inadequate trial preparation, as opposed to trial strategy. Bowen argues that learning what motivated his counsel to make decisions at trial is crucial to a determination of whether his counsel exercised professionally reasonable judgment as set forth in the first prong of *Strickland.* As described above, however, Bowen has not attached an affidavit from his trial counsel, explaining the basis of how he chose the witnesses that he ultimately presented at Bowen's trial, nor has Bowen shown that he was unable to do so.

As the Supreme Court has explained with regard to 28 U.S.C. § 2254(e)(2),

"[t]he purpose of the fault component of 'failed' is to ensure that the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. In this context, "a person is not at fault when his diligent efforts to perform an act are thwarted ... by the conduct of another or by happenstance." *Id.* at 432, 120 S.Ct. 1479.

From the time that he filed his PCRA petition, Bowen has complained about his counsel's failure to call witnesses Dickerson, Damas and Brookens. In doing so, he has singlemindedly focused on the contents of the testimony of the witnesses that his counsel did not call, in the apparent belief that their unheard testimony so exonerated him that his counsel's failure to call them demonstrated both professionally unreasonable performance and prejudice under *Strickland.* Yet, despite this insistence, there is no indication that Bowen sought to develop a claim of unreasonable professional performance under the first prong of *Strickland* by attempting to secure an affidavit concerning his trial counsel's motivation for calling some witnesses, and not others, at Bowen's trial. Nor has Bowen noted that somehow he was thwarted in his effort to do so.

Given that Bowen failed to develop his claim in state court, he may now only obtain an evidentiary hearing on his counsel's motivations for failing to call certain witnesses at trial if he meets the "heightened standard" set forth in 28 U.S.C. § 2254(e)(2). *See id.* at 433, 120 S.Ct. 1479. This he ultimately cannot do. Under 28 U.S.C. § 2254(e)(2)(A)(ii) the petitioner must show that his claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). As the Supreme Court has explained, this provision "pertains to cases in which the facts could not have been discovered, whether there was diligence or not." *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. As discussed above, there is no indication that the relevant facts could not have been readily discovered, and that the affidavit of trial counsel could not have been presented during state court post-conviction proceedings. Consequently, even if Bowen could "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense," 28 U.S.C. § 2254(e)(2)(B), the fact that he failed to develop his claims when the facts underlying it were discoverable, *see* 28 U.S.C. § 2254(e)(2)(A)(ii), renders him ineligible for an evidentiary hearing before the federal court reviewing his habeas petition.

4. *The merits of Bowen's ineffective assistance of counsel claim*

Even if Bowen had met the requirements of 28 U.S.C. § 2254(e), however, the court, in its discretion, may still decline to hold an evidentiary hearing, after deciding "whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *See Campbell*, 209 F.3d at 287. Declining to hold such a hearing is wholly appropriate in this case.

The reason that a new evidentiary hearing would not have the potential to advance Bowen's claims, and thus would not be a warranted use of the court's discretion under AEDPA, is rooted in both the conjunctive nature of the *Strickland* inquiry and the merits of Bowen's claims. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Nino*, 878 F.2d

101, 104 (3d Cir.1989). To put it another way, even if Bowen were allowed an evidentiary hearing in which to develop a record that conclusively demonstrated that inadequate and professionally unreasonable trial preparation precipitated his failure to call Dickerson, Damas and Brookens, this information would not overcome the finding of the state courts that the failure to call these three witnesses caused Bowen no prejudice.

Examination of the record reveals that, whereas Bowen failed to develop a record on the professional reasonableness of his counsel's trial conduct, he did fully develop a record on the issue of whether he suffered prejudice as a result of that conduct.[8] To this end, Bowen presented to the state courts evidence setting forth each uncalled witness' recollection of the night of the shooting. In particular, the evidence that Bowen offered for substantive review consisted of: (1) Thomas Dickerson's preliminary hearing testimony, (2) Jordan Damas' unsworn statement to defense counsel's private investigator, and (3) Ronald Brookens' unsworn statement to defense counsel's private investigator. Having been provided with the substance of each uncalled witness' potential contribution to Bowen's defense, the Superior Court in fact examined these offerings in some detail as it reached its conclusion that Bowen had suffered no prejudice under *Strickland* as a result of his counsel's failure to summon these witnesses to the stand.

The consequences under AEDPA of this full development of the state record are clear: a presumption of correctness attaches to the state court's factual determinations, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As discussed above, a feder-al court is barred from issuing a writ of habeas corpus unless the state court's adjudication resulted in either "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1) or "that was based on an unreasonable interpretation of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). For the reasons that follow, the court concludes that the Superior Court's decision was not contrary to the law of ineffective assistance of counsel as set forth in *Strickland,* and that its ultimate decision to deny Bowen's writ of habeas corpus was not based on an unreasonable interpretation of the facts as presented in the state court proceeding.

### a. *Strickland and the failure to call witnesses*

An evaluation of the failure on the part of defense counsel to call witnesses falls squarely within the first prong of *Strickland,* which pertains to whether the attorney made his tactical decisions "in the exercise of reasonably professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *see also Duncan v. Morton,* 256 F.3d 189, 201 (3d Cir.2001) (citing *Strickland,* and concluding that the failure to use certain testimony "amounted to a tactical decision within the parameters of reasonable professional judgment"). Given professional reasonableness as a touchstone, "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir.1990)(observing that "such tactics would be considered dilatory unless the

---

8. Thus, Bowen would not be entitled to an evidentiary hearing on his prejudice claim.

*See* 28 U.S.C. § 2254(e).

attorney and the court believe that the witness will add competent, admissible, and non-cumulative testimony to the trial record").

The second prong of *Strickland,* which requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [where a] reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, has developed an added gloss. In other words, a petitioner must show a "reasonable likelihood that ... information [not presented] would have dictated a different trial strategy or led to a different result at trial," *Lewis v. Mazurkiewicz,* 915 F.2d 106, 115 (3d Cir. 1990), or a "reasonable probability that he would have been acquitted had [the uncalled witness] testified either alone or in conjunction with [him.]" *Id.*

Keeping in mind the principles of *Strickland,* and the presumption of correctness that attaches to state court factual findings, 28 U.S.C. § 2254(e)(1), the issue is whether the Pennsylvania Supreme Court's use of *Strickland* constituted an unreasonable application of federal law, or an unreasonable application of law to fact. *See* 28 U.S.C. § 2254(d).

#### b. *The Pennsylvania Superior Court's decision*

#### i. *Failure to call Thomas Dickerson*

■ Upon review of Thomas Dickerson's preliminary hearing testimony, the Pennsylvania Superior Court determined that Dickerson would have testified (1) that he saw Bowen's uncle and James Madison, Natson's eventual victim, arguing outside the club on the night of the shoot-

ing, (2) that he observed Natson and Bowen's uncle open fire and shoot Madison, and (3) that he then saw Natson, Bowen and Bowen's uncle, flee the scene in a gray Astrovan.[9] Bowen has offered no evidence contradicting these factual findings, which are entitled to a presumption of correctness rebuttable only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Instead, Bowen contends that the Pennsylvania Superior Court, and the Magistrate Judge who agreed with the Superior Court's decision, either unreasonably applied federal law or unreasonably interpreted the facts before them when they determined that Bowen had not advanced a viable ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d).

The Pennsylvania Superior Court concluded that had this testimony been presented at trial, it would have damaged Bowen's case, because it placed Bowen at the scene of the shooting, and then established that he fled the scene with a coconspirator whom the witness had observed shooting one of the victims. Accordingly, the Superior Court concluded that counsel's decision not to call Dickerson was professionally reasonable, and caused Bowen no prejudice. On the other hand, Bowen argues that he was in fact prejudiced by the omission of Dickerson's testimony because Dickerson's testimony could have impeached that of Reginald Bannister, who was inside the club at the time of the shooting, and who testified that he saw Bowen leaving the club through the rear, as opposed to the front, exit.

The Pennsylvania Superior Court and the Magistrate Judge found that Bowen had not established the prejudice required under *Strickland,* because the presentation of Dickerson's testimony at trial would not

---

**9.** In turn, the Magistrate Judge took note of the fact that Dickerson did not see Bowen with a gun.

dictate a different trial strategy or different outcome at trial. *See Lewis,* 915 F.2d at 115. First, the impeachment value of Dickerson's testimony is limited by the fact that unlike Bannister, the witness whose testimony he might contradict, Dickerson was not inside the club when Williams was shot. Second, the only point at which Dickerson's testimony truly contradicts that of Bannister is in the manner in which the shooter exited the club. Otherwise, Dickerson's testimony fully corroborates that of Bannister in that it places Bowen inside the club at the time of Williams' shooting. Third, given Bannister's testimony, and the version of events elicited through a statement given by witness Lamont Butts to the police, both of which placed Bowen inside the club with a shotgun at the time of Williams' shooting, it is unlikely that a discrepancy regarding Bowen's point of exit would dictate a different trial strategy, or affect the ultimate outcome of Bowen's trial. Under these circumstances, and crediting the Superior Court's factual findings with a presumption of correctness, the court concludes that the Pennsylvania Superior Court's determination that trial counsel's failure to call Dickerson was neither an unreasonable application of federal law, nor an unreasonable interpretation of the facts before it. *See* 28 U.S.C. § 2254(d).

ii. *Failure to call Jordan Damas*

 The Pennsylvania Superior Court determined, according to an unsworn statement taken by Bowen's private investigator over six years after the shooting, that uncalled witness Jordan Damas would testify that: (1) he saw Bowen emerge from the club to quell an argument, but return thereafter, (2) forty-five minutes after Bowen returned to the club, two or three cars drove up to the club and one of the men outside, "Reggie," pulled out a gun, (3) Damas hid behind a car for the remainder of the altercation, (4) after the altercation was over, he observed Bowen exit through the club's front entrance and flee in a gray van.

Bowen has offered no evidence contradicting these factual findings, which, again, are entitled to a presumption of correctness rebuttable only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Instead, as he did with Dickerson, Bowen contends that the Pennsylvania Superior Court, and the Magistrate Judge who agreed with the court's decision, either unreasonably applied federal law or unreasonably interpreted the facts before them when they determined that Bowen had not advanced a viable ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d).

The Pennsylvania Superior Court concluded that Damas' testimony places Bowen in the thick of the altercation that precipitated the shooting deaths, and therefore would have damaged his case if presented at trial. Thus, the Pennsylvania Superior Court concluded that the failure of trial counsel to present Damas as a witness caused Bowen no prejudice. Bowen argues that he did in fact suffer prejudice, because, had Damas testified that he saw Bowen leave the club through the front door, as opposed to the back door, he could have impeached the testimony of Reginald Bannister, who was presented at trial and who stated that he had seen Bowen heading toward the club's rear exit immediately after the shooting.

In light of the facts found by the Pennsylvania Superior Court, the court likewise concludes that Bowen suffered no prejudice. First, Damas' unsworn statement, unlike the testimony and statements of witnesses who were ultimately called at Bowen's trial, was made to a private investigator over six years after the incident in question. Second, Bowen offers no evidence that his trial counsel knew or had

reason to know of Damas' testimony, *see United States v. Dawson,* 857 F.2d 923, 928 (3d. Cir.1988), or that Damas was available to testify at trial. *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir.1991) (petitioner must allege or offer evidence that "any such testimony was forthcoming or available upon reasonable investigation"); *see also Dawson,* 857 F.2d at 928 (finding dismissal of ineffective assistance of counsel claims appropriate where petitioner never contended that his trial counsel "was or should have been aware of ... [the] testimony [of uncalled witnesses].") Third, as in the case of Dickerson, Damas' vantage point was from outside the club, and his testimony does not therefore impeach directly the testimony of those inside the club. Under these circumstances, the court concludes that, even had counsel known of Damas, presenting his testimony would not have precipitated a different trial strategy or outcome. *See Lewis,* 915 F.2d at 115. Under these circumstances, and crediting the Superior Court's factual findings with a presumption of correctness, the court concludes that the Pennsylvania Superior Court's determination that trial counsel's failure to call Damas was neither an unreasonable application of federal law, nor an unreasonable interpretation of the facts before it. *See* 28 U.S.C. § 2254(d).

### iii. *Failure to call Ronald Brookens*

██ The Pennsylvania Superior Court determined, based on the unsworn statement given Bowen's private investigator over six years after the incident in question, that uncalled witness Ronald Brookens would have testified that (1) he was talking to Bowen at the club when a man approached Bowen and said that someone was shooting at Bowen's uncle, (2) that ten seconds after Bowen ran outside the club, James Williams came running into the club and said that he (Williams) had been shot, (3) that Brookens then hid behind an air conditioner, (4) while his back was turned, Brookens heard two loud shotgun blasts, and (5) when Brookens turned around, he saw an armed man, who was not Bowen, exit the club through the dressing room. These factual findings are entitled to a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), which Bowen does not rebut. Instead, Bowen argues that the Pennsylvania Superior Court, and the Magistrate Judge who agreed with the court's decision, either unreasonably applied federal law or unreasonably interpreted the facts before them when they determined that Bowen had not advanced a viable ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d).

The Pennsylvania Superior Court found that Bowen had failed to prove that he had been prejudiced by his counsel's failure to call Brookens. In particular, the Court found that Bowen had not shown that Brookens was willing to testify at trial, and, in any event, that the substance of Brookens' testimony was admitted at trial through other witnesses.

In light of the presumption of correctness that attaches to the factual findings of the Pennsylvania Superior Court, the court also concludes that Bowen suffered no prejudice. First, the court notes that, like that of Damas, Brookens' unsworn statement was given to Bowen's private investigator over six years after the event in question, and has all of the credibility problems that are associated with the passage of a long period of time. Second, as in Damas' case, Bowen has not shown that his trial counsel knew or had reason to know of Brookens' testimony, or that Brookens was available to testify at trial. *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir.1991); *United States v. Dawson,* 857 F.2d 923, 928 (3d. Cir.1988). Third, to the extent that Brookens could offer testimony that an unidentified man fled toward the rear exit of the club, his

testimony was cumulative to that presented at trial, and contradicted by two witnesses inside the club who placed Bowen as the gunman inside the club.

Under these circumstances, and crediting the Pennsylvania Superior Court's factual findings with a presumption of correctness, the court concludes that, even had counsel known of Damas, presenting his testimony would not have precipitated a different trial strategy or outcome. *See Lewis,* 915 F.2d at 115. Thus, the court concludes that the Pennsylvania Superior Court's determination that trial counsel's failure to call Brookens constituted neither an unreasonable application of federal law, nor an unreasonable interpretation of the facts before it. *See* 28 U.S.C. § 2254(d).

### iv. *Conclusions with respect to Bowen's ineffective assistance of counsel claim based on failure to call witnesses*

In connection with Bowen's claim that he was entitled to, and denied, an evidentiary hearing that would allow him to explore the possibility that his counsel's failure to call witnesses Dickerson, Damas and Brookens was the product of inadequate trial preparation in violation of *Strickland,* the court has reviewed all aspects, including the merits, of Bowen's ineffective assistance of counsel claim.

The court concludes that Bowen, through his own lack of diligence has failed to establish, under the first prong of *Strickland,* whether trial strategy, as opposed to inadequate trial preparation, motivated his counsel's decision not to call the three witnesses at trial. Applying the provisions of 28 U.S.C. § 2254(e)(2), therefore, the court concludes that Bowen does not

qualify for an evidentiary hearing because his claim is not based on a factual predicate that could not have been discovered, regardless of his diligence in pursuing it. *See* 28 U.S.C. § 2254(e)(2)(A)(ii).

The court further concludes that, even had Bowen qualified under AEDPA for an evidentiary hearing, this court should not in its discretion grant such a request, given that an examination of the merits of Bowen's *Strickland* claim reveals that Bowen suffered no prejudice at trial as a result of counsel's failure to call Dickerson, Damas and Brookens.

### C. *Counsel's Alleged Failure to Inform Bowen of His Right to Testify and to Make a Batson Challenge*

In his final exceptions to the Report and Recommendation, Bowen challenges the Magistrate Judge's findings that Bowen's two remaining ineffective assistance of counsel claims, one of which was based on an alleged failure on the part of his trial counsel to inform him of his right to testify, and one of which was based on the alleged failure on the part of his trial counsel to issue a challenge to jury selection as set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),[10] were procedurally barred by Bowen's failure to provide necessary transcripts and other information to the state courts reviewing his claims. Because Bowen makes the same arguments with respect to each claim, the two claims will be discussed together.

In particular, Bowen argues: (1) that the state rules upon which the Magistrate Judge relies are not independent and adequate state grounds supporting the PCRA's judgment, (2) that, even if the

---

**10.** Under *Batson,* a defendant establishes a prima facie case of purposeful discrimination in jury selection by "rais[ing] the necessary inference of discrimination" through a combination of factors, including a showing that the

defendant is of a cognizable racial group and that the prosecution used peremptory challenges to exclude members of that racial group from the venire. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712.

state rules constitute independent and adequate state grounds, then Bowen has alleged cause and prejudice sufficient to excuse him from default, and (3) that the PCRA should have held evidentiary hearings upon learning that its factual record on both claims was incomplete. For the reasons that follow, the court concludes that these arguments are without merit.

1. The state procedural rule was both independent and *adequate*

"A federal court on a habeas petition will not address a claim under federal law if, when the claim was presented to the state court, the court rejected the claim on a ground that was both 'independent' of the federal issues and was 'adequate' to support the state court's disposition." *Cabrera v. Barbo*, 175 F.3d 307, 312 (3d Cir. 1999). Because "[a] state court's refusal to address a petitioner's federal claims because he has not met a state procedural requirement is both independent and adequate," *id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)), a prisoner may be unable to obtain a decision on the merits of his federal claims in federal court, even though he has exhausted state remedies. *Id.* at 312–13.

An alternative state ground is "independent" of federal law unless it "fairly appears to rest primarily on federal law, or [is] interwoven with ... federal law, [or when] the adequacy or independence of any possible state law ground is not clear from the face of the opinion." *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct.

3469, 77 L.Ed.2d 1201 (1983). An alternative state ground, such as procedural default is "adequate" if "(1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions." *Doctor v. Walters*, 96 F.3d 675, 683–84 (3d Cir.1996) (citing *Neely v. Zimmerman*, 858 F.2d 144, 148 (3d Cir.1988) and *Wainwright v. Sykes*, 433 U.S. 72, 85–86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Indeed, a "state rule is adequate only if it is 'consistently and regularly applied.'" *Id.* at 684 (quoting *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988)). In practical effect, therefore, "state courts need only demonstrate that in the 'vast majority of cases,' the rule is applied in a 'consistent and regular' manner." *Id.* (quoting *Dugger v. Adams*, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989)).

Bowen argues that the Pennsylvania Superior Court's rulings that his failure to provide trial transcripts and other evidence were neither independent of his federal claims nor adequate state grounds for foreclosing federal habeas review. He challenges the independence of the ruling related to his failure to inform claim on the grounds that the claim was based on events that occurred outside the courtroom and off the record, such that the missing transcripts would have little or no value to a court evaluating the claim that Bowen's lawyer failed to inform him of his right to testify.[11] In a similar vein, Bowen con-

---

11. The argument that a transcript would not enable an appellate court to evaluate claims of ineffective assistance of counsel based on counsel's conduct off the record in failing to advise a defendant of his right to testify lacks merit on its face. First, the trial transcript could foreclose a finding of ineffectiveness under the first prong of *Strickland*, if, in verifying a petitioner's claims, the appellate court discovered in the record that counsel had *in fact* advised his client in open court of his right to testify. Second, even if it does not inform the appellate court of what the lawyer told his client, the trial transcript could foreclose a finding of prejudice under the second prong of *Strickland*, if it reveals that the trial judge engaged the petitioner in a colloquy

tends that transcripts would have little or no value with respect to his *Batson* claim because "[w]hy trial counsel did not make a record is a fact outside the record." Bowen then attacks the adequacy of both rulings on the grounds that there is no evidence that requiring transcripts for appellate review was an established and regularly applied practice at the time of Bowen's default.

■■■ As an initial matter, Bowen appears to have misconstrued the Pennsylvania Superior Court's discussion of the need for transcripts with respect to both claims. With regard to Bowen's failure to inform claim, the Superior Court noted that Bowen "has failed to provide the trial transcripts which, he claims, are devoid of any indication that he was aware of his right to testify. Thus, we are unable to ascertain the veracity of [that] statement." *Commonwealth v. Bowen*, No. 1789 Phila.1998, at 11–12 (Pa.Super.Sept. 20, 1999) (memorandum opinion). With respect to Bowen's *Batson* challenge claim, the Superior Court wrote:

> Here, Appellant has merely listed seven names of prospective jurors who were peremptorily challenged by the prosecutor and baldly asserts that the prospective jurors "were either African American, female, or of a young age." Although Appellant cites to where in the transcripts these challenges are allegedly found, he has not provided those transcripts for our review. Therefore, we are unable to verify the existence of such challenges or trial counsel's alleged failure to object to them.

*Id.* at 10. Although the Superior Court makes specific reference to the need for transcripts in both instances, it is clearly complaining about a much larger problem,

concerning his rights, such that the petitioner was fully aware of his right to testify during

namely Bowen's failure to provide *any* sort of record to substantiate his bare assertions that his counsel was ineffective for failing to inform him of his right to testify and for failing to make a *Batson* challenge when warranted. The question is, therefore, whether the failure to provide a record against which the appellate court could verify Bowen's claim that he had not been informed by counsel of his right to testify and that his counsel had failed to make a *Batson* challenge constitutes an independent and adequate state ground foreclosing review of the merits of a claim of ineffective assistance of counsel when the conduct complained of allegedly occurred outside of the courtroom and therefore could not have been captured in the transcript of court proceedings.

Bowen's argument regarding the independence of the court's rulings on his failure to provide transcripts and other evidence supporting his ineffective assistance of counsel claims also reflects a fundamental misunderstanding of what it means for a state ground to be "independent" of federal law, or, in this case, independent of the underlying constitutional violations that Bowen alleges. Pennsylvania courts have consistently held that "the burden to produce a complete record for appellate review rests *solely* with the appellant." *Commonwealth v. Chopak*, 532 Pa. 227, 615 A.2d 696, 701 n. 5 (1992) (compiling cases). The need for an appellate court to have a complete, or, indeed, some record to review has nothing to do with the subject matter of the issue on appeal or with the law that governs the ultimate disposition of that issue. To put it another way, a party's failure to provide an adequate record forecloses appellate review regardless of whether the underlying claim is based in

his trial.

state contract and tort law, or premised on an alleged constitutional violation, as here. *See Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778, 781 n. 2 (1992) ("What is not of record simply does not exist for purposes of appellate review."). Similarly, the ability of transcripts, in the final analysis, to assist the appellate court in its ultimate disposition of a particular claim is, like the nature of the case, irrelevant to and independent of an appellant's obligation to supply a record that will make some sort of review possible. In this case, Bowen did not comply with his procedural obligation to provide a record, and thus prevented verification by the appellate court of the veracity of his claim.[12]

Bowen then argues that the state rule on the basis of which the Magistrate Judge found procedural default was not "adequate" as set forth in *Long*, 463 U.S. 1032, 103 S.Ct. 3469, allegedly because there "is no evidence" that, at the time at which Bowen defaulted, the rule that a failure on the part of a habeas petitioner

to provide transcripts of his trial, transcripts of his jury selection, or information concerning the composition of his jury, was consistently applied. A survey of the case law reveals that this is not so, and Bowen has failed to point to any specific instance of inconsistent application of these established principles with respect to either his failure to inform claim or his *Batson*-related claim. *See, e.g., Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152, 1159 (1998) (stating that *Batson* challengers must "make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury") (citing *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 631 (1995), *cert. denied*, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996), *citing Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176, 1182–83 (1993)); *Chopak*, 615 A.2d at 701 n. 5 (placing the burden of producing a complete record for appellate review on

12. With respect to his first claim, Bowen appears to have presupposed that supplying a trial transcript constituted the only means by which he could prove that his trial counsel failed to inform him of his right to testify. Bowen effectively assumes that no defendant could ever raise an ineffectiveness claim based on failure to inform, absent some outburst by counsel during trial, and this erroneous assumption serves as the basis for his misguided argument that the state procedural rule cannot be independent of the alleged underlying constitutional violation. This is *not so*. In fact, Bowen and other defendants in his position can pursue other methods of proof to substantiate an otherwise bare assertion of ineffectiveness. In particular, Bowen could have presented to the Pennsylvania Superior Court an affidavit from his trial counsel confirming that he had failed to inform Bowen of a criminal defendant's right to testify in his own defense. By failing to do so, Bowen rendered the record insufficient to permit review of his claim, regardless of that claims legal basis or its merits.

With respect to his second claim, Bowen appears to have misunderstood an appellate court's need for a trial transcript to evaluate whether counsel failed to make a *Batson* challenge where one was warranted. Bowen asserts, very confusingly, that his obligation to provide a transcript of his trial was not independent of his ineffectiveness claim because "why counsel failed to make a record" would not be a fact reflected in the transcript. This argument is baffling because a record of the disputed jury selection was, in fact, made. The complaint of the Pennsylvania Superior Court, as it dismissed Bowen's claim, was simply that this transcript was not provided, and that the Court therefore could not ascertain the veracity of Bowen's otherwise bare assertions concerning the race and age of the dismissed jurors. Defense counsel's subjective motivations are, in any event, irrelevant to the determination of whether the facts obligated him to make a *Batson* challenge. By failing to provide the transcript, Bowen rendered the record insufficient for review.

the appellant, compiling lengthy list of precedent to that effect, and decrying any rule that "would allow [an] appellee to reap the benefit of a new trial based upon his own nonfeasance"); *Commonwealth v. Hyde*, 406 Pa.Super. 445, 594 A.2d 703, 705 (1991) (stating, as a general principle of appellate practice, that failure on the part of an appellant to provide a transcript renders the trial record inadequate for review on appeal).

Against the background of this well-established precedent, Bowen cannot make a valid argument that the state procedural ground giving rise to either of his defaults was inadequate because it was inconsistently applied. Indeed, the opposite appears to be true. With regard to Bowen's claim that he was not informed of his right to testify, it is undisputed that Bowen failed to provide the state appellate courts with transcripts of his trial. With regard to his *Batson* claim, it is undisputed that, whereas Bowen listed seven names of prospective jurors who were either young, African American or female and the subject of a peremptory challenge by the prosecution, and cited to relevant portions of the transcripts that contained the challenges, he did not provide the transcripts themselves to the PCRA court. Moreover, it is undisputed that Bowen failed to indicate the racial composition of either the venire or the final composition of the jury. Therefore, Bowen did not meet his burden of supplying the appellate courts with a record sufficient to enable them to evaluate either of his claims of ineffective assistance of counsel.

Accordingly, the court concludes that the Magistrate Judge properly concluded that Bowen's claims of ineffective assistance of counsel based on an alleged failure to inform petitioner of his right to testify, and on failure to make a *Batson* challenge are procedurally barred by a an independent and adequate state ground.

2. *Bowen alleges no cause and prejudice that excuses him from procedural default.*

Bowen next argues that, even if his two claims are procedurally defaulted based on an independent and adequate state ground, he can demonstrate "cause and prejudice" sufficient to excuse him from default, as set forth under *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For the reasons that follow, the court does not agree.

As an initial matter, Bowen appears to have confused his underlying allegations of ineffective assistance of counsel for a possible causes that could excuse his procedural default. With regard to claim based on alleged failure to inform, Bowen alleges, for example, that the cause that excuses his default is "the ineffective assistance of trial counsel for failing to provide the benefit of professional advice whether to take the stand or not." In a similar vein, Bowen alleges, with regard to his *Batson* claim, that he has established cause for his default by a claim of "ineffective assistance of trial counsel for failing to preserve the *Batson* claim by making appropriate and timely objections." Both of these arguments are, in substance, nothing more than reiterations of Bowen's underlying ineffective assistance of counsel claims against *trial* counsel, and, logically speaking, neither of these alleged failures of trial counsel can be said to have interfered with the petitioner's ability to present a PCRA petition that conforms with state procedural rules.

 The real issue, therefore, is whether the failure of *PCRA* counsel to provide necessary transcripts and other information to the PCRA courts constituted ineffective assistance of counsel, and, concomitantly, cause sufficient to excuse the procedural default of Bowen's underly-

ing failure to inform and *Batson* challenge claims. As a matter of law, it cannot. Although "ineffective assistance of counsel can be cause for procedural default, the attorney's ineffectiveness must rise to the level of a Sixth Amendment violation," *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir.2002) (citing *Murray v. Carrier*, 477 U.S. 476, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)), and the Supreme Court has held that petitioners have no constitutional right to counsel on appeal from the judgment of a state habeas trial court. *Coleman*, 501 U.S. at 755, 111 S.Ct. 2546; *see also Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("[S]ince a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, ... he has no such right when attacking that conviction that has long since become final upon exhaustion of the appellate process."). Therefore, the court concludes that PCRA counsel's omission cannot constitute cause excusing Bowen's default.[13]

## III. CONCLUSION

After considering petitioner's objections to the Report and Recommendation and after reviewing those claims not discussed in the Report and Recommendation, this court overrules petitioner's objections. In so doing, the court concludes that petitioner has failed to show: (1) that his claim of insufficiency of the evidence is not subject

---

**13.** The fact that Bowen also neglected to raise before the Magistrate Judge his counsel's failures to provide necessary documentation on appeal provides an alternative basis for the court's refusal to hear the claims at this juncture. The Federal Rules of Civil Procedure require a district court to review de novo "any portion of [a] magistrate judge's disposition to which specific written objection has been made." Fed.R.Civ.P. 72(b).

to procedural default, (2) that he is entitled to a further evidentiary hearing on his claim of ineffective assistance of counsel for counsel's alleged failure to call certain witnesses at trial, and (3) that he has not procedurally defaulted on his claims of ineffective assistance of counsel based on an alleged failure of counsel to inform him of his right to testify and on a failure of counsel to make a *Batson* challenge. Accordingly, the court will adopt and approve Magistrate Judge Scuderi's Report and Recommendation as supplemented by this memorandum and deny the petition. An appropriate order follows.

## *ORDER*

AND NOW, this **5th** day of **February, 2003,** upon consideration of the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, and after review of the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi (doc. no. 22), petitioner's exceptions (doc. no. 23), and respondent's response to petitioner's exceptions (doc. no. 25), it is hereby **ORDERED** as follows:

1. Petitioner's exceptions to the Report and Recommendation are **OVERRULED;**

2. The Report and Recommendation is **APPROVED** and **ADOPTED;**

3. The petition for writ of habeas corpus is **DENIED;** and

---

A federal district court may properly refuse to hear claims not first presented to the assigned Magistrate Judge. *See Borden v. Sec'y of Health and Hum. Servs.*, 836 F.2d 4, 6 (1st Cir.1987). Accordingly, parties must take before the Magistrate, "not only their 'best shot,' but all of their shots." *Singh v. Superintending Sch. Comm. of Portland*, 593 F.Supp. 1315, 1318 (D.Me.1984). This Bowen did not do, and, on this alternative ground, the court need not consider his claim now.

4. There is no probable cause to issue a certificate of appealability.

**AND IT IS SO ORDERED.**