UNITED STATES of America,

v.

Philip AIKENS.

Criminal Action No. 01–335.
Civil Action No. 04–3930.

United States District Court,
E.D. Pennsylvania.

Feb. 25, 2005.

Phillip Aikins, Bradford, PA, pro se.

Dina Keever, Catherine Votaw, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM*

DuBOIS, District Judge.

Presently before the Court is the Motion of petitioner, Philip Aikens, to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion"). For the reasons set forth below, petitioner's Section 2255 Motion will be denied.

## I. BACKGROUND

On June 14, 2001, a federal grand jury sitting in the Eastern District of Pennsylvania returned a four-count Indictment charging petitioner, Philip Aikens, with theft of interstate shipment and aiding and abetting, in violation of 18 U.S.C. §§ 659 and 2 (Count I); conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 (Count II); interference with interstate commerce by robbery and aiding and abetting, in violation of 18 U.C.S. §§ 1951 and 2 (Count III); and brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2 (Count IV). A Superceding Indictment was filed on November 8, 2001, which included an additional count of willful failure to appear before the court, in violation of 18 U.S.C. § 3146 (Count V).

The case was tried before a jury on February 26 and 27, 2002, and resulted in a verdict of guilty on all counts of the Superceding Indictment. The Court sentenced defendant to concurrent terms of 72 months incarceration on Counts I, II, III and V, and a consecutive 84–month term on Count IV; five years of supervised release; a $500 special assessment; and $115,000 in restitution. The Third Circuit affirmed the conviction on May 14, 2003.

On August 18, 2003, petitioner filed a motion under 28 U.S.C. § 2255 asking the Court to vacate his sentence on the following grounds: (1) trial counsel was constitutionally ineffective due to lack of time spent with petitioner preparing for trial; (2) trial counsel was constitutionally ineffective in failing to advise petitioner of his right to testify and refusing to allow petitioner to testify; and (3) the sentence imposed violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in light of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Court will address these arguments in turn.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 688, 692, 104 S.Ct. 2052. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of

the proceeding whose result is being challenged." *Id.* at 696, 104 S.Ct. 2052.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. 2052. In its analysis, the court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotations omitted). The court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id.* at 690, 104 S.Ct. 2052.

With regard to the prejudice prong of *Strickland,* a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir.2002) (*quoting Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

### 1. Claim: Lack of Time Spent with Defendant Preparing for Trial

Petitioner claims that defense counsel was ineffective because counsel spent "probably a total of 3 hours" with him before trial and that, as a result, he went to trial without really understanding his options. (Def. Motion at 4); *See Carmichael v. United States,* 1998 WL 894592, at *1 (D.Conn. Dec.16, 1998) (02–815) (defense counsel spending a total of 2.9 hours

with defendant was deficient as a matter of law under *Strickland* ). The Court finds that the record belies petitioner's argument that his counsel spent only three hours with him before trial. As an example of what the record discloses, defense counsel was present in Court with petitioner at a suppression hearing held over the course of four days. However, the Court need not decide the question of whether the time counsel spent with petitioner before trial fell below an objective standard of reasonableness because petitioner fails to satisfy the second prong of *Strickland.*

█ As to the prejudice prong of *Strickland,* petitioner's motion does not demonstrate how he was prejudiced by counsel's alleged failure to spend more time with him. *McAleese v. Mazurkiewicz,* 1 F.3d 159 (3d Cir.1993) (burden rests with defendant to establish his claim of ineffectiveness of counsel); he says absolutely nothing on that issue. In short, there is no evidence that the outcome of the proceedings would have been different had counsel spent more time with petitioner. Accordingly, petitioner has failed to satisfy the prejudice prong of *Strickland* and his claim of ineffective assistance of counsel based on the argument that counsel did not spend sufficient time with him before trial is denied.

### 2. Claim: Failure to Fully Advise Petitioner of the Right to Testify and Refusing to Allow Petitioner to Testify

"It is well established that the right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution." *United States v. Pennycooke,* 65 F.3d 9, 10 (3d Cir.1995); *Rock v. Arkansas,* 483 U.S. 44, 49–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). "The right is personal and can be waived only by the defendant, not defense counsel." *United*

*States v. Leggett,* 162 F.3d 237, 245 (3d Cir.1998), *cert. denied,* 528 U.S. 868, 120 S.Ct. 167, 145 L.Ed.2d 141 (1999) (citing *Pennycooke,* 65 F.3d at 10). Although it is the duty of defense counsel to inform defendant of his right to testify, the decision itself is ultimately that of the defendant. *Pennycooke,* 65 F.3d at 12; *see also Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, [including] as to whether ... to testify in his or her own behalf.").

This Court has held that in order "[t]o prevail on trial counsel's alleged refusal to allow a client to testify, the petitioner must do more than just assert that his lawyer refused to allow him to testify." *United States v. Smith,* 235 F.Supp.2d 418, 424 (E.D.Pa.2002)(DuBois, J.). "In a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand." *Id.* (quoting *Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991)).

Petitioner alleges that counsel failed to fully discuss with him whether he should testify at trial. (Def. Reply at 5). He further contends that counsel refused him the opportunity to testify despite his repeated requests to do so. (*Id.*). Had counsel informed him that it was ultimately his decision whether to testify, he argues, he would have taken the stand. (*Id.*).

Had defense counsel prevented petitioner from exercising his constitutional right to testify, his performance would have fallen below *Strickland's* objective standard of reasonableness. *See Pennycooke,* 65 F.3d at 10. Similarly, had counsel failed to inform petitioner of his right to testify and that the ultimate decision whether to testify belonged to him, counsel would have neglected his duty to ensure that the petitioner's right to testify was protected. *See id.* at 12. However, the Court need not conduct an evidentiary hearing to determine whether petitioner can establish those allegations because he has failed to demonstrate a reasonable probability that the result of the proceeding would have been different had he testified. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

To establish prejudice, petitioner must produce evidence that defense counsel's error undermined confidence in the outcome of the case, and he has failed to do so. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Petitioner contends that if he had been permitted to testify, he would have "specifically rebutted the prejudicial aspects of the alleged co-conspirator's testimony" and "denied ... the government's allegations and the alleged co-conspirator's claims that he was part of the charged conspiracy." (Def. Motion at 7). He also argues that this testimony could have convinced the jury to believe his "side of the story" instead of the cooperating witnesses'. (Def. Reply at 6)

Petitioner's assertion that his testimony would have contradicted the testimony of the cooperating witnesses is insufficient to satisfy *Strickland's* prejudice element. The Court reaches the same conclusion with respect to his general denial of involvement in the crimes for which he was convicted. Other than the conclusory assertion that he would have "set the record straight," petitioner does not explain to the Court what his testimony would have been. (Def. Reply at 5). These statements fail to show that, with petitioner's testimony, there is a reasonable probability that the result of the proceedings would have been different. *See Bowen v. Blaine,* 2002 WL 32345743, *10 (E.D.Pa. Jan.29, 2002) (report and recommendation adopted by

*Bowen v. Blaine,* 243 F.Supp.2d 296 (E.D.Pa.2003)(Robreno, J.)) (petitioner failed to satisfy the prejudice prong because his testimony would have only amounted to a blanket denial of involvement in the crime); *Sayre v. Anderson,* 238 F.3d 631, 634 (5th Cir.2001) (finding that defendant's "self-serving conclusory statement that his testimony would have resulted in an acquittal, standing alone, falls far short of satisfying *Strickland's* prejudice element.").

For the reasons set forth above, petitioner's claim of ineffective assistance of counsel on the ground that his counsel did not fully discuss with him whether he should testify and that counsel prevented him from testifying is denied. That denial is based on petitioner's failure to set forth the details of his proposed testimony in order to establish to a reasonable probability that the result of the proceedings would have been different had he testified.

### 3. An Evidentiary Hearing is Not Required

■ "The question whether to order an evidentiary hearing is committed to the sound discretion of the district court." *Government of Virgin Islands v. Bradshaw,* 726 F.2d 115, 117 (3d Cir.1984). In making such a determination, the court must consider as true all of petitioner's nonfrivolous factual claims. *United States v. Dawson,* 857 F.2d 923, 927 (3d Cir.1988). If petitioner's nonfrivolous claims conclusively fail to satisfy either prong of the *Strickland* test—that counsel's performance fell below an objective standard of reasonableness or prejudiced the defendant—then an evidentiary hearing is not required. *Id.* at 928. In view of the Court's determination that petitioner's claims of ineffective assistance of counsel conclusively fail on the prejudice prong of *Strickland,* the Court need not hold an evidentiary hearing. *See id.*

### B. Petitioner's Argument that his Sentence Violates *Apprendi* and *Blakely*

Petitioner argues that his sentence is unconstitutional in light of the Supreme Court decisions in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The briefs in this case focus on the Supreme Court rulings in *Apprendi* and *Blakely* because, at the time of filing those papers, the related case of *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), had not been decided. The Court will, of course, consider *Booker* in deciding this issue.

Petitioner objects to his sentence because the sentencing court adopted the factual findings and guideline calculations in the presentence report which enhanced his sentence above the base offense level and did not submit evidence that resulted in the enhancements to a jury to be found beyond a reasonable doubt. Specifically, the sentencing court added two levels to petitioner's base offense level because a person was physically restrained to facilitate commission of the offense (U.S.S.G. § 2B3.3(4)(B)); two levels because the loss was between $50,000 and $250,000 (U.S.S.G. § 2B3.1(b)(7)(C)); and two levels based on defendant's willful failure to appear in court (U.S.S.G. § 3C1.1). Petitioner argues that these issues should have been submitted to a jury.

Petitioner's argument requires an analysis of three Supreme Court decisions—*Apprendi, Blakely,* and *Booker*—and related decisions. The Court begins its analysis with a brief review of *Apprendi, Blakely,* and *Booker.*

In *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the defendant pled guilty to state firearm offenses

and was sentenced to an enhanced sentence under the New Jersey hate crime law after the trial judge found by a preponderance of the evidence that the defendant had committed a hate crime. The Supreme Court, stating that the Due Process Clause requires that the findings upon which defendant's hate crime sentence was based must be proved to a jury beyond a reasonable doubt, held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 471, 490, 120 S.Ct. 2348.

In *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403, the Supreme Court overturned a sentence imposed under Washington's sentencing system which permitted judges to enhance the sentences of defendants based on information that had not been proven beyond a reasonable doubt to a jury. The Court expanded the ruling in *Apprendi* which was limited to sentences which exceeded the statutory maximum, concluding that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.,* 124 S.Ct. at 2536–537 (internal quotations omitted).

Finally, in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, the Supreme Court reaffirmed *Apprendi* and ruled that the holding in *Blakely* was applicable to the Sentencing Guidelines. On the latter issue the Court stated that the Sixth Amendment requires that a jury, not judge, find "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict." *Id.,* 125 S.Ct. at 750 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). In addition, the Court

declared that the Sentencing Guidelines were no longer mandatory, but merely advisory, and that the courts of appeals should review sentences for "reasonableness" in light of the statutory sentencing factors identified in 18 U.S.C. § 3553(a). *Id.,* 125 S.Ct. at 755, 767.

The core of the dispute between petitioner and the government is whether the rules announced by the Supreme Court in *Blakely* and extended to the federal Sentencing Guidelines in *Booker* apply retroactively to cases on collateral review. That decision is governed by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

■ The threshold determination in analyzing the retroactivity of a new rule of law is whether the rule is substantive or procedural in nature. *United States v. Swinton,* 333 F.3d 481, 487 (3d Cir.2003). The Court finds that the *Blakely* and *Booker* are rules of criminal procedure because these decisions "dictate[ ] what fact-finding procedure must be employed to ensure a fair trial" and are not concerned with whether particular conduct is unlawful. *See United States v. Jenkins,* 333 F.3d 151, 154 (3d Cir.2003) (quoting *United States v. Sanders,* 247 F.3d 139, 147 (4th Cir.2001)); *see also Swinton,* 333 F.3d at 488–89 (finding *Apprendi* to be a procedural rule because it is "concerned with the identity of the decision-maker, and the quantum or evidence required for a sentence, rather than with what primary conduct is unlawful") (internal citations omitted).

*Teague* set forth the general principles regarding the retroactivity of new rules and outlined a three-step analysis for determining whether a particular rule is retroactive. *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). First, the court must determine whether the petitioner's conviction became

final before the new decision he invokes. *See Lewis v. Johnson,* 359 F.3d 646, 653 (3d Cir.2004). If the conviction had not yet become final, the petitioner is entitled to the benefit of the decision. As petitioner's conviction became final before *Blakely* and *Booker* were decided, he is not entitled to the benefit of those decisions unless the rules they announced are retroactive.

The second step is to determine whether the decision adopted a new rule of law. *See id.* at 654. If the decision did not adopt a new rule, the petitioner is entitled to the benefit of the decision. If a new rule was adopted, the court must determine whether one of the two *Teague* exceptions applies. Petitioner argues that *Blakely* and *Booker* did not adopt new rules and merely clarified *Apprendi.* Therefore, he contends, the non-retroactivity principles of *Teague* do not apply.

A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. Moreover, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Swinton,* 333 F.3d at 489 (*quoting Teague,* 489 U.S. at 301, 109 S.Ct. 1060).

The Supreme Court decision in *Booker* significantly altered the way federal courts utilize the Sentencing Guidelines. First, in the wake of *Booker,* the rule announced in *Apprendi,* as extended in *Blakely,* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" is now applicable to sentences under the federal the Sentencing Guidelines. *Booker,* 125 S.Ct. at 756. Second, district courts are no longer bound to follow the federal Guidelines. Rather, sentencing courts are required to "consult [the] Guidelines and take them into account when sentencing." *Id.,* 125 S.Ct. at 767. Thus, the Guidelines, now advisory, permit courts "to tailor the sentence in light of other statutory concerns." *Id.,* 125 S.Ct. at 755.

Before the decisions in *Blakely* and *Booker,* courts held, without exception, that *Apprendi* was inapplicable if the sentence did not exceed the statutory maximum sentence. *See, e.g., Simpson v. United States,* 376 F.3d 679, 681 (7th Cir., 2004); *United States v. Hughes,* 369 F.3d 941, 947 (6th Cir.2004); *United States v. Francis,* 367 F.3d 805, 820 (8th Cir.2004); *United States v. Jardine,* 364 F.3d 1200, 1209 (10th Cir.2004); *United States v. Alvarez,* 358 F.3d 1194, 1211–12 (9th Cir. 2004); *United States, v. Casas,* 356 F.3d 104, 128 (1st Cir.2004); *United States v. Phillips,* 349 F.3d 138, 143 (3rd Cir.2003); *United States, v. Floyd,* 343 F.3d 363, 372 (5th Cir.2003). Therefore, at the time that petitioner's sentence became final, a "reasonable jurist would not have felt compelled" to adopt the rule announced in *Booker. See Swinton,* 333 F.3d at 489. In fact, *Apprendi* and *Blakely* explicitly "express[ed] no view" on the federal Guidelines. *Apprendi,* 530 U.S. at 497 n. 21, 120 S.Ct. 2348; *Blakely,* 124 S.Ct. at 2538 n. 9. In other words, at the time petitioner's conviction became final, precedent did not require the Court apply *Apprendi* to his sentence. *See Teague,* 489 U.S. at 301, 109 S.Ct. 1060. For all of these reasons, the Court concludes that *Booker's* extension of *Apprendi* and *Blakely* to the federal Sentencing Guidelines established a new rule.[1]

---

1. By the same reasoning, the Court concludes that *Blakely* announced a new rule. However, the Court's analysis focuses on *Booker* because it is directly applicable to the instant case since *Booker* specifically addressed the constitutionality of the Sentencing Guidelines.

The final step in the *Teague* analysis is to determine whether the new rule satisfies one of the two *Teague* exceptions. *See Lewis*, 359 F.3d at 654. If neither exception applies, the petitioner is not entitled to the benefit of the decision.

The first exception—that the rule places certain primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe—is not applicable to this case. Under the second exception, a new rule applies retroactively if it is "implicit in the concept of ordered liberty," implicating "fundamental fairness," and is "central to an accurate determination of innocence or guilt," such that its absence "creates an impermissibly large risk that the innocent will be convicted." *Teague*, 489 U.S. at 311–313, 109 S.Ct. 1060; *Swinton*, 333 F.3d at 487 ("*Teague's* second exception is reserved for watershed rules of criminal procedure that not only improve the accuracy of trial, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.").

The Supreme Court decision in *Schriro v. Summerlin*, —— U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), is instructive on this issue. In that case, the Court held that *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which extended the *Apprendi* rule to a death sentence imposed under the Arizona sentencing scheme, did not apply retroactively to cases on collateral review. *Id.* The *Summerlin* Court concluded that the rule announced in *Ring* did not demand retroactive application, holding "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished. This class of rules is extremely narrow, and it is unlikely that any … ha[s] yet to emerge." *Summerlin*, 124 S.Ct. at 2523 (internal citations omitted).

In reaching its decision, the Court concluded that judicial factfinding did not "seriously diminish" accuracy to the extent that there was an "impermissibly large risk" of punishing conduct the law did not reach. *Id.*, 124 S.Ct. at 2523.

This Court concludes that a similar analysis dictates that *Booker* is not a watershed rule. *See In re Dean*, 375 F.3d 1287, 1290 (11th Cir.2004) (*Summerlin* "has strongly implied that *Blakely* is not to be applied retroactively."). As discussed above, *Booker* was a two-part decision. First, the Court held that judicial factfinding can no longer support a sentence exceeding the maximum authorized by a plea of guilty or a jury verdict. Second, the Court ruled that the sentencing guidelines are advisory rather than mandatory. Neither of these holdings are "central to an accurate determination of innocence or guilt" such that there is "an impermissibly large risk" that the innocent will be convicted. *Summerlin*, 124 S.Ct. at 2523. "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all*, we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." *Id.*, 124 S.Ct. at 2525 (emphasis in original). Similarly, *Booker's* holding that the sentencing guidelines are advisory, cannot be said to "seriously diminish" accuracy to the extent that there was an "impermissibly large risk" of punishing conduct the law did not reach. *Teague*, 489 U.S. at 312–13, 109 S.Ct. 1060.

Consequently, *Booker* is not a watershed rule of criminal procedure that should be applied retroactively to cases on collateral review. Accordingly, petitioner's Section 2255 Motion on this ground is denied.

### III. CONCLUSION/CERTIFICATE OF APPEALABILITY

For the foregoing reasons, the Court denies petitioner's Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The Court grants petitioner a certificate of appealability, pursuant to 28 U.S.C. § 2253(c), with respect to petitioner's claim that his sentence violates *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because the issue is one of first impression in this Circuit and petitioner has made a substantial showing of the denial of a constitutional right.

Upon the denial of a 28 U.S.C. § 2255 motion by the district court, an appeal to the Court of Appeals is not permitted unless the petitioner obtains a certificate of appealability. 28 U.S.C. § 2253. "At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue." Third Cir. Loc.App. R. 22.2. "[A]s a matter of practice ... an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court." *See United States v. Williams*, 158 F.3d 736, 742 n. 4 (3d Cir.1998) (citing *Fitzsimmons v. Yeager*, 391 F.2d 849, 851–55 (3d Cir.1968) (en banc)).

A certificate of appealability shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing of the denial of a constitutional right, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

 While this Court has determined that *Booker* does not apply retroactively to cases on collateral review, it concludes that because Third Circuit authority on this issue has yet to emerge, reasonable jurists could find this Court's "assessment of the

constitutional claims debatable or wrong." *Id.* at 484, 120 S.Ct. 1595. For this reason, the Court grants a certificate of appealability on the issue of whether petitioner's sentence is unconstitutional in light of the Supreme Court decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 25th day of February, 2005, upon consideration of the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255 (Document No. 77, filed August 18, 2004), filed by petitioner, Philip Aikens, the Government's Response to Defendant's Habeas Corpus Motion Under 28 U.S.C. § 2255 (Document No. 83, filed October 8, 2004), and the related submissions of the parties, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255 (Document No. 77) is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is granted with respect to petitioner's claim that his sentence violates *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), extended to the United States Sentencing Guidelines in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), on the ground that petitioner has made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c).