**UNITED STATES of America**

v.

**Joseph C. WENZEL, Defendant.**

**Civil Action No. 04–212 Erie.**

**Criminal Action No. 99–33 Erie.**

United States District Court, W.D. Pennsylvania.

March 2, 2005.

---

Joseph C. Wenzel, Jr., White Deer, PA, pro se.

## *MEMORANDUM OPINION*

McLAUGHLIN, District Judge.

Presently pending before this Court is a motion by Defendant Joseph C. Wenzel to set aside his sentence pursuant to 28 U.S.C. § 2255.[1] For the reasons set forth below, Wenzel's motion will be denied.

## I. BACKGROUND

In November of 1999, Rena "Tracy" Seyfert and Joseph C. Wenzel were named as defendants in a four-count indictment returned by a federal grand jury in Erie, Pennsylvania. Seyfert was charged with unlawful conversion of surplus federal government property in violation of 18 U.S.C. § 641 and attempting to persuade a witness to provide false information to FBI agents in violation of 18 U.S.C. § 1513(b)(3). Wenzel was charged with one count each of conspiracy and attempt to persuade a witness to provide false information to FBI agents. Wenzel was initially released on bond; however, within two days, the government filed a motion to detain him.

On November, 10, 1999, a detention hearing was held before the Magistrate Judge. At that hearing, Wenzel's brother and another individual each testified that Wenzel had threatened the life of one Harold "Frosty" Crane, the subject of the attempted witness tampering. Wenzel's bond was revoked two days later after the Magistrate found there was probable cause to believe that Wenzel had committed the crime of soliciting murder and there was clear and convincing evidence that he had violated the conditions of his release.

On January 24, 2000, Wenzel pleaded guilty to both the conspiracy and attempt charges as part of a negotiated plea deal. The plea agreement, which was made part of the record, provided in relevant part as follows:

> The parties stipulate that the government would retain and reserve its right to argue, if appropriate, for an upward departure from the applicable Sentencing Guidelines based on JOSEPH WENZEL's conduct which allegedly occurred subsequent to the return of the indictment on November 3, 1999. The parties also stipulate that the government will not file additional charges against defendant JOSEPH WENZEL based upon the conduct which was the subject of the bond revocation hearing held on November 10, 1999. This stipulation represents the parties' best understanding on the basis of the information available as of the date of this agreement. The stipulation is not binding on the District Court and does not preclude either party from bringing to the attention of the United States Probation Office or the District Court any information not within his knowledge at the time this agreement executed.

---

1. A motion under § 2255 allows a federal prisoner "in custody ... claiming a right to be released" to challenge his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the [sentencing] court was without jurisdiction ...., or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

In anticipation of his sentencing, Wenzel filed a motion for a downward departure relative to the calculation of his criminal history category. In response, the government asserted its own motion for an upward departure based on evidence it intended to introduce establishing that Wenzel, following his bond revocation, solicited others to kill his brother and a federal prosecutor and also made statements about killing an FBI agent and Seyfert's counsel.

Wenzel's initial sentencing took place on May 15, 2000. At the outset, this Court assigned Wenzel a total offense level of 12 in criminal history category III, resulting in a sentencing range of 15 to 21 months' incarceration. Then, in support of its motion for an upward departure, the government presented the testimony of various individuals who had been incarcerated with Wenzel following the revocation of his bond, each of whom had allegedly heard Wenzel make threats against the aforementioned targets and/or were solicited by Wenzel to commit murder.

At the conclusion of the testimony, this Court found that the government had proved the allegations supporting an upward departure by clear and convincing evidence. Recounting in detail the pertinent credible testimony, we specifically concluded that Wenzel had indeed threatened or solicited the murder of multiple victims, including government officials. Characterizing Wenzel's conduct as a "pernicious attempt to avoid conviction at any cost," we found that it fell outside the heartland of the guidelines and merited an upward departure. In determining the extent of the departure, we considered the range applicable to two analogous guidelines: § 2A1.5, which governs conspiracy or solicitation to commit murder, and § 2J1.2, which governs offenses involving

obstruction of justice. Applying § 2A1.5 with all relevant adjustments, this Court calculated an overall offense level of 39. Applying § 2J1.2, the Court arrived at an overall offense level of 25. The Court then opted to apply an offense level of 29 which, in light of Wenzel's Category III criminal history assignment, produced a sentence range of 108 to 135 months. The Court sentenced Wenzel at the top of the range, imposing consecutive terms of incarceration for 50 months at Count 2 and 75 months on Count IV, to be followed by a 3–year term of supervised release.

On direct appeal, Wenzel's sole argument was that the Court's imposition of an upward departure was not supported by clear and convincing evidence. Wenzel maintained that the record failed to support a finding that he had engaged in the alleged threats and solicitations, since the government's witnesses had admitted that they did not take Wenzel seriously and considered him a "blowhard." The Third Circuit Court of Appeals concluded that the departure was consistent with the sound exercise of this Court's judicial discretion and affirmed the sentence.

Wenzel subsequently filed a timely motion to vacate his sentence under 28 U.S.C. § 2255, alleging that: (a) the Court's calculation of analogue guidelines was erroneous and his sentencing counsel was ineffective in failing to recognize and/or object to this error; (b) the government had presented testimony at the sentencing hearing concerning information provided by one Paul Cooper which it knew or should have known was false; and (c) the government failed to disclose impeachment material relative to Mr. Cooper. This Court ultimately ruled that the offense level utilized under one of the relevant sentencing analogues had been erroneously computed[2]

2. Both the government and Wenzel's § 2255 counsel agreed that, while it was appropriate

and that Wenzel's sentencing counsel had been ineffective in failing to challenge this error. The Court further concluded that this misapplication of the guidelines presumptively prejudiced Wenzel, requiring his sentence to be vacated.

Accordingly, this Court held a second sentencing hearing on August 6, 2002. At this re-sentencing, the government once again moved for an upward departure based upon Wenzel's various threats and solicitations of murder. Wenzel presented new evidence in an attempt to undermine the credibility of Mr. Cooper and William Maden, both whom had testified for the government at the original sentencing hearing. After hearing the new evidence, this Court found that while Cooper was no longer a credible witness, Maden still was, and the record fairly established—by clear and convincing evidence—adequate grounds for a substantial upward departure. Turning to the guidelines calculations, we next determined that the proper offense level using the § 2J1.2 analogue for obstruction of justice was 26. We had previously determined, in the context of Wenzel's first § 2255 motion, that the offense level using the § 2A1.5 analogue should be 36, rather than 39 as this Court had originally assumed. (See n. 2, supra.) Having considered these two analogues, we assigned an offense level of 27 to Wenzel's conduct which, when applied to crimi-

nal history category III, produced a sentencing range of 87 to 108 months. This Court then imposed a sentence of 107 months of imprisonment (consecutive terms of 60 months at Count 2 and 47 months at Count 4), to be followed by a 3–year period of supervised release.

Wenzel again appealed his sentence, arguing that this Court erred in various respects by continuing to credit the testimony of William Maden. The Court of Appeals rejected Wenzel's arguments and affirmed his sentence in an opinion rendered on July 31, 2003.

Wenzel's time for filing a petition for certiorari expired on October 29, 2003, and his conviction therefore became final as of that date.[3] On July 22, 2004, Wenzel timely filed the § 2255 motion which is now before the Court.[4]

## II. DISCUSSION

Wenzel's present § 2255 motion is premised on the theory that his constitutional rights were violated when this Court imposed a 15–level enhancement based on its findings that Wenzel had made threats and/or solicited murder. Wenzel contends that, because these facts were not proved to a jury beyond a reasonable doubt, the Court's upward departure violates the teachings of *Apprendi v. New Jersey*, 530

---

for this Court to consider the analogue guidelines under § 2A1.5 for solicitation/conspiracy to commit murder, the relevant offense level, after all appropriate adjustments, should have been 36 rather than 39. The inflated offense level was the result of our erroneous factual finding during the May 15, 2000 sentencing hearing that Wenzel had solicited the murders of an FBI agent and Seyfert's attorney. In fact, the record supported only a finding that Wenzel had made threats against those individuals, but not solicited their murder. The Court remained of the view that the appropriate offense level under § 2J1.2 would be 25 or 26.

3. A federal prisoner's conviction becomes final upon the denial of a petition for certiorari or upon 90 days from the entry of judgment if no petition is filed. *See Griffith v. Kentucky*, 479 U.S. 314, 321 fn. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Kapral v. United States*, 166 F.3d 565, 570–71 (3d Cir.1999).

4. *See* 28 U.S.C. § 2255 (establishing a one-year period of limitations running from the latest of, *inter alia*, the date on which the judgment of conviction becomes final).

U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In addition, Wenzel maintains that his prior counsel was ineffective in failing to assert this argument. In order to properly evaluate Wenzel's § 2255 claims, we first review the Supreme Court's rulings in *Apprendi, Blakely,* and, most recently, *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

### A.

In *Apprendi,* the Supreme Court considered the constitutionality of a New Jersey hate crime statute that permitted the trial judge to impose an extended term of imprisonment upon making a factual determination, based upon a preponderance of the evidence, that the defendant acted with a purpose to intimidate another person because of the person's race. Following Apprendi's guilty plea to second-degree possession of a firearm for an unlawful purpose—a crime carrying a prison term of 5 to 10 years—the trial judge found by a preponderance of the evidence that Apprendi's conduct was racially motivated. In light of this finding, the hate crime statute permitted the trial judge to extend Apprendi's imprisonment to a term of between 10 and 20 years. The trial judge applied the enhancement and sentenced Apprendi to a 12–year term of imprisonment. The Supreme Court held that the hate crime statute violated due process principles by removing from the jury's consideration the factual determination as to whether a defendant had acted with the prohibited "hate crime" motive. *See* 530 U.S. at 497, 120 S.Ct. 2348. "Other than the fact of a prior conviction," the Court wrote, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

In *Blakely,* the Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence that a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* . . . not the maximum sentence that a judge may impose after finding additional facts." —— U.S. at ——, 124 S.Ct. at 2537 (emphasis in the original). *Blakely* involved application of the Washington Sentence Reform Act, which prescribed a standard range sentence for various criminal offenses but permitted the sentencing judge to depart above the standard range upon finding that "substantial and compelling reasons" justified the exceptional sentence. The defendant, Mr. Blakely, had pleaded guilty to second degree kidnaping involving domestic violence and use of a firearm—an offense for which the standard range sentence was 49 to 53 months. However, the sentencing judge imposed an exceptional sentence of 90 months, finding that Blakely had acted with "deliberate cruelty," a statutorily sanctioned ground for departure in domestic violence cases. The sentence was affirmed by the state appellate court, *see* 111 Wash.App. 851, 47 P.3d 149, 159 (2002), and the Washington Supreme Court denied review. *See State v. Blakely,* 148 Wash.2d 1010, 62 P.3d 889 (2003).

The United States Supreme Court held that the Washington statute violated the teachings of *Apprendi* because the "deliberate cruelty" finding, which allowed Blakely to be sentenced to more than 3 years above the maximum standard range for his offense, had neither been submitted to a jury nor admitted at the plea. The Court observed that Blakely's sentencing judge could not have imposed the 90–month exceptional sentence based solely upon the facts admitted in the guilty plea because, under the Washington sentencing scheme, "[a] reason offered to justify an

exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense." —— U.S. at ——–——, 124 S.Ct. at 2537–2538 (quoting ·State v. Gore, 143 Wash.2d 288, 21 P.3d 262, 277 (2001)). No such factors existed in Blakely's case, as the elements of second-degree kidnaping and use of the firearm were factors previously considered in computing the standard range sentence. Thus, the sentencing scheme was invalid because it violated Blakely's Sixth Amendment right to have the jury find the existence of "any particular fact" that the law makes essential to his punishment. Id. at 2536 (citation omitted).

Most recently, the Supreme Court applied the teachings of Apprendi and Blakely in a case involving the United States Sentencing Guidelines. In United States v. Booker, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2004), the Supreme Court considered two cases involving defendants who were convicted of federal drug offenses. In both cases, the sentencing judges had made factual findings that would have authorized a period of imprisonment in excess of that which could have been imposed on the basis of the jury verdicts alone.[5] The Court held that imposition of the enhanced sentences under these circumstances would violate the defendants' Sixth Amendment right to a jury trial. Central to the Court's ruling was its observation that the Guidelines, as written, were not advisory but rather mandatory and binding on judges, and that departure from the Guidelines was not an option available in most cases. See id. at 750 ("In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range."). Accordingly, the Court reaffirmed its holding in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756. The Court then went on to hold that the constitutional infirmity inherent in the Federal Guidelines could be remedied by severing and excising 18 U.S.C. § 3553(b)(1), the provision which makes the Guidelines mandatory, as well as § 3742(e), a provision which depends upon the Guidelines' mandatory nature. Id. at 756–57. With this modification, the Court noted, the Federal Sentencing Act[6] makes the Guidelines effectively advisory, requiring a sentencing judge to consider the Guideline ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but permitting the judge to tailor the sentence in light of

---

**5.** In the case of United States v. Booker, the sentencing judge found by a preponderance of evidence that the defendant was guilty of obstructing justice and had· possessed an additional 566 grams of crack beyond the amount determined by the jury. Those findings required the sentencing judge to impose a period of incarceration of between 360 months and life, rather than the a period of 210 to 262 months' incarceration as authorized by the jury's verdict. In the case of United States v. Fanfan, the sentencing judge found by a preponderance of evidence that the defendant had been an organizer, leader, manager or supervisor in the criminal activity and that he was responsible for quantities of drugs in excess of that found by the jury. These facts authorized a sentence in the range of 188 to 235 months, rather than the maximum 78 months authorized by the jury's verdict. See Booker, —— U.S. at ——–——, 125 S.Ct. at 746–747.

**6.** See Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq.

other statutory concerns. *See* § 3553(a)(Supp.2004). *Booker,* —— U.S. at ——–——, 125 S.Ct. at 756–57.

### B.

We now turn to Wenzel's case so as to evaluate his § 2255 motion in light of the foregoing authority. Wenzel contends that his sentence violates the principles of *Apprendi* and *Blakely* (and, by extension, *Booker*) in that the 15–level upward departure was based upon this Court's finding that Wenzel had threatened other individuals and/or solicited their murders. The enhanced sentence, although within the relevant statutory maximums,[7] was nevertheless in excess of the standard guideline range of 15–21 months.

#### 1. *The Apprendi Challenge*

To the extent Wenzel's § 2255 motion is based on an alleged *Apprendi* violation, we agree with the government's assertion that the claim is procedurally defaulted, as Wenzel never raised this challenge either at his August 2002 re-sentencing or on direct appeal. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Carlin v. United States,* 30 F.Supp.2d 814, 817–18 (M.D.Pa. 1998). A procedural default bars our review of Wenzel's *Apprendi* claim unless he can establish cause for the waiver and also "actual prejudice" resulting from the alleged violation. *See Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Wenzel has attempted to overcome the procedural default in two respects.

■ On one hand, Wenzel asserts that Assistant Public Defender Thomas Pat-ton—who represented Wenzel during his first § 2255 motion and subsequently at the August 2002 re-sentencing—was ineffective for failing to assert an *Apprendi* challenge, despite being requested to do so. Although ineffectiveness of counsel can serve as "cause" to excuse a procedural default, the standard is a demanding one. *See United States v. Mannino,* 212 F.3d 835, 840 (3d Cir.2000) (a successful showing of ineffective assistance of counsel may satisfy the "cause" prong of a procedural default inquiry, but only if the ineffectiveness rises to the level of a constitutional deprivation). The Third Circuit Court of Appeals has explained the relevant standard as follows:

> To demonstrate that his counsel was ineffective, [the defendant] " 'must (first) show that counsel's representation fell below an objective standard of reasonableness.' " *United States v. Cross,* 308 F.3d 308, 315 (3d Cir.2002) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A court "deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (emphasis added). With respect to the reasonableness of counsel's conduct, "[o]nly in a rare case can an attorney's performance be considered unreasonable under prevailing professional standards when she does not make an [argument] which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law." *Gov't of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). "(T)he proper standard

---

7. The maximum statutory periods of incarceration for Counts 2 and 4 were 5 years and 10 years, respectively. *See* 18 U.S.C. §§ 371 and 1512(b)(3).

for (measuring minimum constitutional) attorney performance is that of reasonably effective assistance," *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, and not "exceptional" assistance, *Brown v. United States,* 311 F.3d 875, 877 (8th Cir.2002).

*United States v. Davies,* 394 F.3d 182, 189–90 (3d Cir.2005).

Under this standard, Wenzel's assertion of ineffectiveness on the part of Mr. Patton is unavailing. Wenzel's enhanced sentence was within the relevant statutory maximums for both counts to which he pled guilty and, at the time of his re-sentencing and direct appeal, the Third Circuit—as well as every federal circuit court of appeals—construed such a sentence as comporting with the mandates of *Apprendi.* *See United States v. Williams,* 235 F.3d 858, 862–63 (3d Cir.2000); *United States v. Cepero,* 224 F.3d 256, 267 n. 5 (3d Cir.2000) (en banc). *Accord United States v. Baltas,* 236 F.3d 27, 40–41 (1st Cir.2001); *United States v. Garcia,* 240 F.3d 180, 183–84 (2d Cir.2001); *United States v. Kinter,* 235 F.3d 192, 202 (4th Cir.2000); *United States v. Meshack,* 225 F.3d 556, 576 (5th Cir. 2000); *United States v. Corrado,* 227 F.3d 528, 542 (6th Cir.2000); *Talbott v. Indiana,* 226 F.3d 866, 869–870 (7th Cir. 2000); *United States v. Aguayo–Delgado,* 220 F.3d 926, 933–34 (8th Cir.2000); *United States v. Garcia–Guizar,* 227 F.3d 1125, 1129–1130 (9th Cir.2000); *United States v.*

*Hishaw,* 235 F.3d 565, 577 (10th Cir.2000); *United States v. Gerrow,* 232 F.3d 831, 834 (11th Cir.2000); *In re Sealed Case,* 246 F.3d 696, 698–699 (D.C.Cir.2001). Indeed, in both rulings from the Third Circuit affirming Wenzel's judgments of sentence, Judge Rosenn (writing only for himself) expressed concern that Wenzel's sentence implicated Fifth Amendment and Seventh Amendment violations, but he concluded that Third Circuit precedent foreclosed any challenges along those lines. *See United States of America v. Wenzel,* No. 00–1729, 2001 WL 667839 (3d Cir. May 15, 2001) at pp. 12–15 (Rosenn, J.) (concurring), and No. 02–3264 (3d Cir. July 31, 2003) at p. 10, n. 9.

Simply stated, Mr. Patton was not ineffective either in failing to forecast the change in the legal landscape brought about by the Supreme Court's *Blakely* decision or in concluding that an *Apprendi* challenge was unlikely to succeed. Accordingly, Wenzel cannot establish "cause" for his procedural default by way of an ineffective-assistance-of-counsel claim.[8]

Alternatively, Wenzel argues that his procedural default should be excused because the basis for his *Apprendi* claim was "reasonably unavailable" at the time of his re-sentencing and subsequent appeal. (*See* Pl.'s Reply Br. [Doc. No. 197] at p. 3.) The Supreme Court has stated that "futility cannot constitute cause if it means simply that a claim was unacceptable to that

---

**8.** We note parenthetically that in cases where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may nevertheless be reviewed in habeas proceedings if the defendant can show that the constitutional error in question "has probably resulted in the conviction of one who is actually innocent." *See Bousley,* 523 U.S. at 622–23, 118 S.Ct. 1604. "Actual innocence" in this regard means factual innocence, not mere legal insufficiency. *Id.* at 623–24, 118 S.Ct. 1604. Wenzel has not expressly articulated a claim of "actual inno-

cence" as to the conduct that gave rise to his sentencing enhancement but, even if we were to interpret his motion in such a manner, the claim would fail. The evidence which this Court credited, both at Wenzel's original sentencing and at his August 2002 re-sentencing, clearly and convincingly supported the government's allegations that Wenzel had threatened the lives of other individuals and/or solicited their murder. This Court's credibility determinations were twice upheld on direct appeal, and we find no basis for revisiting them at this point.

particular court at that particular time." *Bousley,* 523 U.S. at 623, 118 S.Ct. 1604 (internal quotation reference omitted). Notably, other courts have rejected similar claims of futility in the context of *Apprendi* challenges. *See, e.g., McCoy v. United States,* 266 F.3d 1245 (11th Cir.2001); *Lilly v. United States,* 342 F.Supp.2d 532, 540 (W.D.Va.2004); *United States v. Shark,* 158 F.Supp.2d 43 (D.D.C.2001), *aff'd* 60 Fed.Appx. 333 (D.C.Cir.2003), *cert. denied,* 540 U.S. 924, 124 S.Ct. 327, 157 L.Ed.2d 224 (2003); *Herrera v. United States,* 169 F.Supp.2d 92, 97 (E.D.N.Y.2001).[9]

 However, even if it could be said that Wenzel's *Apprendi* argument was "reasonably unavailable" at the time of his re-sentencing and direct appeal, thus excusing his procedural default, his request for relief still fails on the merits. The law is clear that "nothing prevents a defendant from waiving his *Apprendi* rights." *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2541. Indeed, "[w]hen a defendant pleads guilty, the State is free to seek judicial sentencing enhancements so long as the defendant either stipulates to the relevant facts *or consents to judicial factfinding.*" *Id.* (emphasis supplied)(citing *Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348; *Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)).

In this case, Wenzel waived any *Apprendi* challenge he might otherwise have possessed by entering into his plea agreement, which specifically contemplated that the government could seek a sentencing enhancement based on Wenzel's conduct following his bond revocation. Although Wenzel's guilty plea and original sentencing occurred prior to the date that *Apprendi* was decided by the Supreme Court, his re-sentencing occurred in August of 2002—well after *Apprendi* had been handed down. At no time in the interim did Wenzel move to withdraw his guilty plea or otherwise challenge the judicial factfinding procedures contemplated by his plea agreement. Even in his current § 2255 motion, Wenzel does not attack the validity of his plea or the agreement pursuant to which it was entered. By the time of Wenzel's re-sentencing, it was crystal clear that the government intended to move for an upward departure (just as it had at the time of his original sentencing) based on allegations that Wenzel had threatened the lives of several individuals and solicited murder with respect to some of them. Although Wenzel contested the reliability of the government's evidence, he never sought to revoke his plea or submit the government's allegations to a trial by jury. Indeed, Wenzel had good reason not to. Had Wenzel revoked his plea, the government would have been free to pursue additional criminal charges based upon Wenzel's post-bond-revocation conduct—conduct as to which this Court ruled there was at least clear and convincing evidence. Had the government proved to a jury, e.g., that Wenzel solicited Thomas O'Steen to commit the murder of Frosty Crane for pecuniary gain, the recommended sentencing range under the guidelines would have been (conservatively) 97 to 121 months of incarceration,[10] in addition to the minimum

---

**9.** Nor can it be stated that Wenzel's *Apprendi* claim "is so novel that its legal basis is not reasonably available to counsel." *See Bousley, supra,* at 622, 118 S.Ct. 1604 (quoting *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). As Wenzel implicitly acknowledges, the case law was replete with decisions involving *Apprendi* challenges simi-

lar to the one he now pursues. *See* pp. 410–411, *supra.*

**10.** *See* U.S.S.G. Sentencing Table (1998 version), applying offense level 28 and Criminal History Category III. For purposes of his re-sentencing, Wenzel conceded that, in calculating the sentencing guideline for solicitation of

15–21 months which Wenzel would face upon conviction of the underlying conspiracy and witness tampering charges. Had the government proved to a jury that Wenzel offered a fellow inmate money to have the federal prosecutor killed, the recommended sentencing range for that offense alone would have been (conservatively) 210 to 262 months of incarceration.[11] Thus, Wenzel clearly stood to gain from the plea agreement which, although allowing for the possibility of an enhanced sentence based upon judicial fact-finding, also protected Wenzel against the possibility of defending new criminal charges carrying severe criminal penalties. Because Wenzel consented to this Court's judicial fact finding at the time of his re-sentencing, his *Apprendi* claim fails on the merits.

## 2. *The Blakely/Booker Challenge*

■ To the extent Wenzel argues that his sentence violates the holdings of *Blakely* and/or *Booker*, he faces additional problems. Both *Blakely* and *Booker* were decided after the date (October 29, 2003) on which Wenzel's conviction became final. Accordingly, unless those decisions apply retroactively, Wenzel cannot benefit from their holdings.

■ When a Supreme Court decision results in a new rule of law, that rule applies to all criminal cases pending on direct review, *see Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), but the rule applies only in limited circumstances as to convictions that are already final. *Schriro v. Sum-*

*merlin,* —— U.S. ——, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). New *substantive* rules—e.g., decisions that narrow the scope of a criminal statute or constitutional rulings that place particular conduct or persons beyond the State's power to punish—are generally retroactive in their application. *Id.* at 2522 (citations omitted). That is because such rules "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 2522–2523 (internal quotations omitted).

■■ On the other hand, new rules of procedure generally do not have retroactive application. *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2523. Unlike substantive rules, procedural rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* In light of this more speculative connection to innocence, only a small set of procedural rules are given retroactive effect—i .e., those "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. *Id.* (quoting *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)). It is not enough that the rule is "fundamental" in "some abstract sense"; rather, "the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'" *Id.* (quoting *Teague v. Lane,* 489 U.S.

---

murder as provided under § 2A1.5, the offense level relative to the Thomas O'Steen solicitation by itself would be 28. (*See* Def.'s Position With Respect to Sentencing Factors [Doc. No. 176] at p. 14.)

**11.** *See* U.S.S.G. Sentencing Table (1998 version), applying offense level 35 and Criminal History Category III. This assumes a base

offense level of 28 under § 2A1.5 for solicitation of murder, plus an additional 4 levels based on a jury's finding that Wenzel offered money in soliciting the murder, *see* § 2A1.5(b), and 3 additional levels based on the victim's status as a government attorney. *See* § 3A1.2.

288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (emphasis in original). The Supreme Court has noted that "[t]his class of rules is extremely narrow, and 'it is unlikely that any . . . ha(s) yet to emerge.'" *Id.* (quoting *Tyler v. Cain*, 533 U.S. 656, 667 n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001)) (internal quotation omitted).

Here, there is little doubt that the rule of law established by *Blakely* and, more precisely, by *Booker* is one of procedure rather than substance. Those cases establish the rule that, if the government intends to increase a defendant's authorized punishment contingent upon the existence of a fact, that fact must be found by a jury beyond a reasonable doubt, unless the defendant stipulates either to the fact or to fact-finding by a different method. *Booker*, —— U.S. at ——, ——, 125 S.Ct. at 749, 756; *Blakely*, —— U.S. at ——, ——, 124 S.Ct. at 2537, 2541. Unlike a substantive rule, *Blakely* and *Booker* "do[ ] not alter the range of conduct or the class of persons that the law punishes." *Summerlin*, —— U.S. at ——, 124 S.Ct. at 2523 (citation omitted). Rather, they regulate "only the *manner of determining* the defendant's culpability," *id.* (emphasis in original), and they are therefore procedural in nature.

The Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), establishes a frame-work within which to adjudicate whether habeas relief can be granted on the basis of a new rule of law.[12] First, we must determine the date on which the petitioner's conviction became final, which we have already noted was October 29, 2003 in Wenzel's case. Both *Blakely* and *Booker* were decided after that date.

Second, we must determine whether Wenzel's claim rests on a new rule of constitutional law, a point which is disputed by the parties. In *Blakely*, the Supreme Court stated that "[its] precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant,"* (internal citation omitted)—it is not the maximum statutory penalty that can be imposed with the benefit of judicial factfinding. —— U.S. at ——, 124 S.Ct. at 2537. Wenzel seizes on this language in arguing that *Blakely* is no more than the logical application of *Apprendi* and does not impose a new rule of law. The government contends that *Blakely* represented a change in the law because, prior to that decision, not one federal court of appeals believed that *Apprendi's* use of the term "statutory maximum" equated to the applicable guideline range.[13]

---

**12.** Although *Teague* was decided in the context of a state habeas claim under 28 U.S.C. § 2254, it is equally applicable in the § 2255 context. *See United States v. Swinton*, 333 F.3d 481, 490 (3d Cir.2003), *cert. denied*, 540 U.S. 977, 124 S.Ct. 458, 157 L.Ed.2d 330 (2003).

**13.** See, e.g., *U.S. v. Hughes*, 369 F.3d 941, 947 (6th Cir.2004), *cert. granted and judgment vacated*, —— U.S. ——, 125 S.Ct. 1042, 160 L.Ed.2d 1032 (2005); *U.S. v. Francis*, 367 F.3d 805, 820–21 (8th Cir.2004), *cert. granted and judgment vacated*, —— U.S. ——, 125 S.Ct. 988, 160 L.Ed.2d 998 (2005); *U.S. v. Jardine*, 364 F.3d 1200, 1209 (10th Cir.2004), *cert. granted and judgment vacated*, —— U.S. ——, 125 S.Ct. 1024, 160 L.Ed.2d 1008 (2005); *U.S. v. Alvarez*, 358 F.3d 1194, 1211–12 (9th Cir.2004), *cert. denied* by *Valenzuela v. U.S.*, —— U.S. ——, 125 S.Ct. 126, 160 L.Ed.2d 148 (2004); *U.S. v. Williams*, 235 F.3d 858, 863–64 (3d Cir.2000); *U.S. v. Patterson*, 348 F.3d 218, 228–29 (7th Cir.2003); *U.S. v. Randle*, 304 F.3d 373, 378 (5th Cir.2002), *cert. denied*, 538 U.S. 962, 123 S.Ct. 1748, 155 L.Ed.2d 514 (2003); *U.S. v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir.2001); *U.S. v. Webb*, 255 F.3d 890, 897–98 (D.C.Cir.2001); *U.S. v. Angle*, 254 F.3d 514, 518 (4th Cir.2001); *U.S. v. Caba*, 241 F.3d 98, 100–01 (1st Cir.2001);

We find the government's position to be the more compelling. A rule is "new" when "it breaks new ground or imposes a new obligation on the States or the Federal Government," *Teague*, 489 U.S. at 301, 109 S.Ct. 1060, or when, "assaying the legal landscape" at the time, it was *not* dictated by then-existing precedent. *Beard v. Banks,* —— U.S. ——, —— – ——, 124 S.Ct. 2504, 2511–13, 159 L.Ed.2d 494 (2004). A rule is considered to be "dictated by then-existing precedent" if the unlawfulness of the defendant's conviction "was apparent to all reasonable jurists." *Id.* at 2511 (citing *Lambrix v. Singletary,* 520 U.S. 518, 527–528, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). Despite the language Wenzel quotes from *Blakely,* it can hardly be said that the alleged constitutional deficiency in Wenzel's sentence was apparent to all reasonable jurists at the time it was imposed. On the contrary, under the law as it existed prior to *Blakely,* Wenzel's sentence would have been upheld by every federal circuit court of appeals in the country. *See* n. 13, *supra.* Under these circumstances, we can hardly deny that the decisions in *Blakely* and *Booker* broke new ground and imposed new sentencing obligations on the government. Other federal courts facing similar § 2255 challenges have likewise concluded that the rules established by *Blakely* and *Booker* constitute new rules of law. *See, e.g., McReynolds v. United States,* 397 F.3d 479, 480 (7th Cir.2005) (*Booker* represents the establishment of a new rule about the federal sentencing system); *United States v. Siegelbaum,* No. CR 02–179–01–PA, CV 04–1380–PA, 2005 WL 196526 at *2, 359 F.Supp.2d 1104, 1106 (D.Or. Jan.26, 2005) (*Booker* and *Blakely* are new rules of law because neither decision was dictated by *Apprendi* ); *Lilly v. United States,* 342 F.Supp.2d 532, 536

*U.S. v. Garcia,* 240 F.3d 180, 183–84 (2d

(W.D.Va.2004) (*Blakely* established new rule); *United States v. Cino,* 340 F.Supp.2d 1113, 1117 (D.Nev.2004) (*Blakely* established new rule). We are in agreement with these courts and we likewise now hold that *Blakely/Booker* represent new rules of law for purposes of our analysis under *Teague.*

Third, we must determine whether *Blakely/Booker* fall under one of *Teague's* narrow exceptions to the retroactivity bar. The first exception, which applies to new *substantive* rules (i.e., those that narrow the scope of criminal conduct), *see Summerlin,* —— U.S. at —— – —— and n. 4, 124 S.Ct. at 2522–23 and n. 4, we need not consider because we have already determined that the rules of *Blakely* and *Booker* are procedural, not substantive. The only other exception under *Teague* applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2524 (internal quotations omitted). The scope of this exception is limited to those new procedures without which the likelihood of accuracy is "seriously diminished" such that there is an " 'impermissibly large risk' of punishing conduct the law does not reach." *Id.* at 2525 (quoting *Teague,* 489 at 312–13, 109 S.Ct. 1060). *See also Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)(to satisfy exception for watershed procedural rules, the new rule must improve the accuracy of criminal proceedings and "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.") (internal quotations omitted).

The government contends that the Supreme Court's decision in *Summerlin* "puts to rest" any argument that *Blakely* (or *Booker* ) would fall within *Teague's* ret-

Cir.2001).

roactivity exceptions. We cannot entirely agree.

In *Summerlin,* the Supreme Court considered whether its earlier decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was retroactively applicable to cases already final on direct review. *Ring* had involved an *Apprendi* challenge to a death sentence imposed under Arizona's sentencing scheme which required that a sentencing judge, before imposing a death sentence, first find beyond a reasonable doubt the presence of an aggravating factor. The Court held in *Ring* that, because a death sentence could only be imposed if an aggravating factor was present, *Apprendi* required the existence of such a factor to be proved to a jury rather than to a judge.

In *Summerlin,* the Court held that *Ring* was not retroactively applicable under *Teague.* It first concluded that *Ring* involved a procedural rule, noting that "rules that regulate only the *manner of determining* the defendant's culpability are procedural." — U.S. at ——, 124 S.Ct. at 2522 (emphasis in the original). The Court then rejected the assertion that the jury requirement for sentencing factors established in *Apprendi* and *Ring* was a "watershed" rule of procedure requiring retroactive application. The Court noted that it could not "confidently say that judicial [versus jury] fact-finding *seriously* diminishes accuracy." *Id.* at 2525 (emphasis in original). Significantly, however, the Court in *Summerlin* did not address (because it did not need to) whether a procedural rule would achieve "watershed" status by requiring sentencing factors to be proved *beyond a reasonable doubt,* as opposed to some lesser standard of proof (typically, a preponderance of the evidence or, in the instant case, clear and convincing evidence). Therefore, unlike the government, the Court is not completely sanguine that *Summerlin* forecloses any retroactive application of *Blakely* or *Booker* in Wenzel's case.

Fortunately, we receive some guidance from the Third Circuit's decision in *United States v. Swinton,* 333 F.3d 481 (3d Cir. 2003), *cert. denied,* 540 U.S. 977, 124 S.Ct. 458, 157 L.Ed.2d 330 (2003). *Swinton* involved an *Apprendi* challenge by a federal prisoner who argued that his due process and jury trial rights were violated by the trial court's instructions to the jury that the government need not prove the quantity and identity of drugs involved in his case. The question before the court was whether *Apprendi* was a new rule of law with retroactive application for purposes of rendering the petitioner's § 2255 motion timely under 28 U.S.C. § 2255(3).[14] Having first determined that *Apprendi* presented a new rule of constitutional law, the court next determined that the rule of *Apprendi* was procedural in nature, thus triggering analysis under *Teague v. Lane, supra.* In relevant part, the *Swinton* Court ruled that *Apprendi* falls outside of Teague's narrow exception reserved for "watershed rules of criminal procedure that not only improve the accuracy of trial, but also 'alter our understanding of the *bedrock procedural elements* ' essential to the fairness of a proceeding." 333 F.3d at 487 (emphasis in the original) (quoting *Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)). In so ruling, the Third Circuit joined ranks with the Second, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Cir-

---

**14.** Section 2255(3) provides a one-year period of limitation running from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255.

cuit Courts of Appeals. *See Coleman v. United States,* 329 F.3d 77, 79 (2d Cir. 2003), *cert. denied,* 540 U.S. 1061, 124 S.Ct. 840, 157 L.Ed.2d 719 (2003); *United States v. Brown,* 305 F.3d 304, 309 (5th Cir.2002); *Curtis v. United States,* 294 F.3d 841, 843–44 (7th Cir.2002); *United States v. Mora,* 293 F.3d 1213, 1219 (10th Cir.2002); *United States v. Sanchez–Cervantes,* 282 F.3d 664, 670 (9th Cir.2002); *United States v. Moss,* 252 F.3d 993, 998–99 (8th Cir.2001); *McCoy v. United States,* 266 F.3d 1245,-1258 (11th Cir.2001); *United States v. Sanders,* 247 F.3d 139, 151 (4th Cir.2001).

Although the Third Circuit has not yet decided whether *Blakely* and/or *Booker* apply retroactively on collateral review, the prevailing view among other federal courts is that they do not. *See Varela v. United States,* 400 F.3d 864 (11th Cir.2005) (per curiam) (*Booker* decision is not retroactively applicable to case on collateral review); *McReynolds v. United States,* 397 F.3d 479, 480 (7th Cir.2005) (*Booker* not retroactively applicable to cases on collateral review); *U.S. v. Price,* 118 Fed.Appx. 465, 467 (10th Cir.2004) (holding that, to the extent *Blakely* applies to the federal guidelines, it does not apply retroactively to cases on collateral review); *Reid v. Stewart,* 119 Fed.Appx. 58, 59 (9th Cir. 2004) (*Blakely* does not apply retroactively to cases on collateral review); *Spiridigliozzi v. U.S.,* 117 Fed.Appx. 385, 387 (6th Cir.2004) (*Blakely,* like *Apprendi,* is not retroactive as to § 2255 cases); *United States v. Aikens,* 358 F.Supp.2d 433, 440–41, 2005 WL 433440 at *8 (E.D.Pa. Feb.25, 2005) (*Booker* is not a watershed rule of criminal procedure that should be applied retroactively to cases on collateral review); *Lilly v. United States,* 342 F.Supp.2d 532, 538–39 and n. 5 (W.D.Va.2004) (*Blakely* is not "watershed" rule of criminal procedure that would receive retroactive application) (citing cases); *United States v. Cino,* 340 F.Supp.2d 1113, 1117–18 (D.Nev.2004) (same).

We now similarly hold that neither *Blakely* nor *Booker* constitute new procedural rules of "watershed" status and, consequently, neither rule applies retroactively on collateral review. In so holding, we note that the "watershed" exception is an extremely narrow one and, because "such procedures would be so central to an accurate determination of innocence or guilt," the Supreme Court has stated that it is "unlikely that many such components of basic due process have yet to emerge." *Graham v. Collins,* 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (citation omitted). Indeed, since *Teague v. Lane* was decided in1989, the Supreme Court has not found a rule to be retroactive. *See United States v. Mandanici,* 205 F.3d 519, 529 (2d Cir.2000); *Lilly,* 342 F.Supp.2d at 538.

Because the holdings of *Blakely* and/or *Booker* are not retroactively applicable to cases like Wenzel's that are under collateral review pursuant to § 2255, his claim based upon those decisions must fail. However, even if we were to apply those decisions retroactively, for the reasons previously discussed, Wenzel's underlying challenge to his sentence fails because he waived any *Apprendi/Blakely/Booker* challenges to the judicial fact-finding that occurred at his August 2002 re-sentencing.

## III. CONCLUSION

Based upon the foregoing reasons, Wenzel's motion for relief under § 2255 will be denied. However, we will issue a certificate of appealability as to Wenzel's *Blakely/Booker* challenge because it is an issue of first impression in this Circuit and because Wenzel has made a substantial showing of the denial of a constitutional right. *See United States v. Aikens, supra,*

2005 WL 433440, at *8, 338 F.Supp.2d at 440–41.

### *ORDER*

AND NOW, this ____ day of March, 2005, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's motion [Doc. No. 191] to vacate, set aside, or correct his sentence is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability shall be issued as to Defendant's argument that his sentence is unconstitutional in light of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).